**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jonathan E. SMITH, a/k/a John Smith, Defendant–Appellant.**

No. 94–5724.

United States Court of Appeals,
Fourth Circuit.

Argued May 4, 1995.

Decided Aug. 21, 1995.

**ARGUED:** William Lee Davis, III, Lumberton, NC, for appellant. Robert Edward Skiver, Asst. U.S. Atty., Raleigh, NC, for appellee. **ON BRIEF:** Janice McKenzie Cole, U.S. Atty., Amanda J. Green, Third Year Law Student, North Carolina Cent. University School of Law, Raleigh, NC, for appellee.

Before MURNAGHAN and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded for resentencing by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge MURNAGHAN and Judge MICHAEL joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

Jonathan Smith appeals from his conviction and sentencing on six narcotics charges. He contends, *inter alia*, that the district court gave a misleading and prejudicial supplemental jury instruction, improperly denied his motion for a new trial based on ineffective assistance of counsel, and erred in enhancing his sentence on grounds of obstruction of justice. We find Smith's first contention, as well as his further allegations of trial error, unpersuasive, and therefore affirm his conviction. Also, concluding that Smith's new trial motion was untimely, we affirm the district court's denial of that motion on the grounds that it lacked jurisdiction to hear it. However, because we agree that the district court failed to make the specific findings of perjury necessary to support the sentencing enhancement for obstruction of justice, we remand for resentencing.

I.

The facts giving rise to Smith's conviction arose from two separate events, nearly a

year apart. We recount the evidence in the light most favorable to the government.

On August 18, 1992, an undercover officer for the Raleigh Police Department observed Smith making two street-level sales of crack cocaine. Smith was immediately arrested. A search of his person turned up a medicine bottle containing 10.3 grams of crack. After his arrest, Smith was advised of, and waived, his *Miranda* rights. He admitted that the previous day he had received 40 grams of crack for resale.

On July 27, 1993, a postal carrier attempted to deliver an Express Mail package to a trailer in Fayetteville, North Carolina. Finding nobody at home, the carrier left a notice advising that the package could be retrieved at the post office. Two days later, Smith and Glen David, a/k/a Travis Washington, twice attempted to pick up the package. Both times they were refused because they did not produce identification of the addressee, "Lee Lane." David returned alone a third time and was again rebuffed. The postal supervisor witnessed these scenes and, his suspicions aroused, contacted the postal inspector. Shortly thereafter, a sheriff's deputy arrived with a narcotics detection dog which alerted on the package sought by Smith and David. The package was opened and found to contain approximately 122 grams of crack, all but 5 of which were removed by the postal inspector. The package was then resealed. A search warrant for the residence to which the package was addressed was obtained and a controlled delivery was planned for the following day.

On July 30, that delivery was made. Glen David was at the trailer. He accepted the package and signed as "Travis Jefferson." In short order, state and federal officers executed the search warrant. David and a third party were found inside and arrested; Smith was not present. A search of Smith's bedroom turned up a revolver, a pager, and $7000 in cash in seven equal stacks made up of small denominations. Elsewhere in the house agents found the unopened Express Mail package, a semi-automatic pistol, 13.9 grams of crack in a plastic bag, and a small set of postal scales. During the execution of the search warrant, Smith arrived at the trailer by car. After being warned off by a gesticulating neighbor, Smith made a U-turn and sped away. He was pursued in an unmarked police car, caught, and arrested.

Smith was subsequently indicted on six drug trafficking offenses. The heart of the indictment charged Smith with conspiring during July 1993 to possess and distribute crack cocaine and with use of a firearm during and in relation to a drug trafficking offense. The sixth count was not related to the alleged July 1993 conspiracy. It charged that on or about August 18, 1992, Smith possessed with intent to distribute crack cocaine.

Testifying for the government at the ensuing jury trial, Smith's indicted co-conspirator Glen David offered detailed testimony regarding a conspiracy, lasting barely over a month, to distribute crack. David testified that on at least four separate occasions he and Smith purchased crack in multiple-ounce quantities from a drug dealer named "T" in Brooklyn; that they would then sell the crack in Fayetteville in quantities ranging from a quarter-ounce to an ounce to distributors of user amounts; that the two firearms, the pager, and the $7000 cash all belonged to Smith; and that Smith had rented the trailer. According to police testimony, Smith had corroborated the details of the July conspiracy in a confession that he made upon his July 30th arrest (and after he waived his *Miranda* rights).

Smith testified in his own defense. He denied making either the August 18, 1992 or the July 30, 1993 confessions. He also denied any involvement in drug trafficking. According to Smith's testimony, the drugs and guns found in the July 30th raid belonged to David, who was staying as a guest in Smith's trailer. Smith admitted ownership of the $7000 in cash but explained that it was a loan from his mother and sister.

After closing arguments, the district court instructed the jury on all counts. On the conspiracy charge, the district court gave the instruction that Smith had requested. After some deliberation, however, the jury asked that the conspiracy instructions be clarified. The court gave a supplemental instruction to

which Smith did not object. An hour later, the jury returned a verdict of guilty on all counts.

At the June 1994 sentencing hearing, Smith asked that his counsel, Assistant Public Defender Gale Adams, be removed because he "thought she didn't do a good enough job." The district court expressed skepticism over Smith's complaints, opining that Adams was "one of the best lawyers available, public defender or private," but nonetheless acceded to Smith's request for a continuance and appointment of new counsel.

Smith then added that he had just found out that the public defender's investigator who had worked on his case was also affiliated with the Cumberland County Sheriff's Department—the very sheriff's department that was involved in the July 1993 controlled delivery, search, and arrest. After a brief colloquy with Ms. Adams during which she confirmed that Investigator Chuck Livingston might indeed be a Special Deputy for the County Sheriff's Department, the district judge ruled that he would direct appointment of a private attorney to represent Smith. The court also speculated that Smith might have a legitimate request for a new trial based on conflict of interest. The court reflected that

> [i]t doesn't sound right to me how you can have an investigator be defendant's investigator and be a member of a law enforcement agency who is prosecuting the case.
>
> . . . .
>
> You don't get to prosecute the case and represent the defendant at the same time even though you might be able to do it. It certainly would be efficient, but the system just doesn't tolerate that.

J.A. 310–11.

New counsel having been appointed, Smith filed a motion for a new trial based on "newly discovered evidence" and "other grounds" on September 16, 1994. Smith argued in particular that Investigator Livingston's conflict of interest led him to investigate the case inadequately and to sabotage Smith's chances for acquittal by informing potential defense witnesses that they would not be needed to testify at trial. Smith maintained that, had

these fact and character witnesses "been called to testify, their testimony was of such character and relevancy that it would probably [have] result[ed] in a different verdict."

Despite its earlier expression of sympathy for Smith's argument, the district court denied Smith's motion at the subsequent consolidated hearing on the motion and for sentencing. The court concluded that

> [t]he claims made by the defendant having to do with the conflict of interest between the Public Defender's investigator and the police are not material to the charges and trial in this case.
>
> The defendant was investigated and prosecuted by other law enforcement personnel. There isn't any showing that the part-time employment of that investigator in any way impacted on the full events and representation that the defendant had by his counsel of trial in this case. There simply isn't any nexus between the alleged conflict and the trial and conviction in this case.

The sentencing hearing proceeded. At its conclusion, the district court sentenced Smith to 200 months imprisonment on each of the five trafficking offenses, all to run concurrently, and to 60 months on the firearms conviction, to commence thereafter.

## II.

Smith raises numerous issues on appeal. His three principal contentions are that the district court's supplemental jury instructions were erroneous and prejudicial, that the court erred in enhancing his sentence on the grounds of obstruction of justice, and that the court erred in denying his motion for a new trial for ineffective assistance of counsel. We will address these three arguments in order.

### A.

Although Smith complains generally that the supplemental instructions offered on the conspiracy charge were "confusing," "imbalanced," and "prejudicial," the gist of his argument focuses on the district court's failure to repeat its initial admonition that "mere presence at the scene of a crime or

transaction ... doesn't mean that they are in a conspiracy." Of course, Smith was not entitled to any particular language just because the court had used it in its initial instruction. Rather, in responding to a jury's request for clarification on a charge, the district court's duty is simply to respond to the jury's apparent source of confusion fairly and accurately without creating prejudice. *United States v. United Medical and Surgical Supply Corp.*, 989 F.2d 1390, 1407 (4th Cir.1993). The particular words chosen, like the decision whether to issue any clarification at all, are left to the sound discretion of the district court. *United States v. Horton*, 921 F.2d 540, 546 (4th Cir.1990), *cert. denied*, 501 U.S. 1234, 111 S.Ct. 2860, 115 L.Ed.2d 1027 (1991).[1]

■ It is apparent to us that the district court did not in this case abuse its discretion. While the court did omit its earlier reference to "mere presence," it nonetheless adequately conveyed that the jury could not convict on the conspiracy charge unless the government proved beyond a reasonable doubt that Smith actually entered into an agreement with one or more other persons to possess and distribute crack cocaine. In particular, the court stated that

> the government has to prove that the defendant and another person knowingly and willfully made an agreement, that they had a meeting of the minds to violate the law.
>
> . . . .
>
> The agreement doesn't have to be in writing. It doesn't even have to be spoken out in precise terms. But they do have to agree, and mere similar conduct would not be an agreement if they didn't come to an agreement.
>
> Now, the fact that persons do things that are the same or that one person may know that another person is committing a crime doesn't mean that you are in agree-

ment with them, but if you enter into an agreement, if you have a meeting of the minds such that you both know what you are going to do, the nature and scope of the agreement, and that you do that knowingly and willfully and the purpose of the agreement is to violate the law, then that is a crime.

This was a fair and accurate statement of the law. Because Smith was not legally entitled to anything more, his challenge to the court's supplemental instructions must fail.

**B.**

During sentencing the district court gave Smith a two-level obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 for committing perjury. Smith acknowledges that the Guidelines contemplate that a defendant's commission of perjury qualifies as obstruction of justice, *see* U.S.S.G. § 3C1.1, application note 3(b) (1994), and that the Supreme Court has held such an enhancement constitutional. *United States v. Dunnigan*, — U.S. —, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). Smith argues, however, that imposition of the enhancement in this case cannot stand because the district court failed to make the specific factual findings that *Dunnigan* requires. We agree.

■ The definition of perjury under the Sentencing Guidelines is the same as that which obtains under the substantive federal criminal law. It contains three elements: (1) false testimony (2) concerning a material matter (3) given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory). *Dunnigan*, — U.S. at —, 113 S.Ct. at 1116, 18 U.S.C. § 1621(1). Because the government cannot secure a sentencing enhancement on the grounds of perjury unless it proves each of the foregoing elements by a preponderance of the evidence, an enhancement under

---

1. The government argues that because Smith failed to object below to the supplemental instructions we may not reverse unless the instructions constituted plain error. Fed.R.Crim.P. 52(b). Smith responds, in essence, that his failure to object should be excused because he "was not given the opportunity to object" that, he claims, Fed.R.Crim.P. 30 requires. We have noted before that "Rule 30 is not implicated every time a trial judge comments in response to a jury inquiry or clarifies a previous instruction," *Horton*, 921 F.2d at 547, and doubt that it applies here. In any event, because we conclude that the district court's clarifying instructions did not constitute an abuse of discretion, we need not consider whether Smith's challenge should be reviewed under the more deferential plain error standard.

§ 3C1.1 does not apply automatically every time a criminal defendant who testifies at trial is convicted. It may be that the defendant's specific statements on the stand were true, or were not intentionally false, or were not material. Accordingly, the *Dunnigan* Court cautioned that

> if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out.... When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if, as was the case here, the court makes a finding of an obstruction of justice that encompasses all of the factual predicates for a finding of perjury.

—— U.S. at ——, 113 S.Ct. at 1117.[2]

■ In this case, Smith did object to the enhancement. When the sentencing court asked the government to justify its requested obstruction enhancement, the government responded by charging that Smith had perjured himself in three particulars: by "den[ying] any involvement at all in the offenses for which he was found guilty"; by denying that he had confessed to the offenses in August 1992 or July 1993; and by denying that the cash found at his trailer was the proceeds of drug trafficking. Afterwards, the court stated simply: "All right. Well, I will deny the objection to the increase for obstruction of justice." J.A. 359–60. Clearly, the district court did not comply with the Supreme Court's directive in *Dunnigan.* The court did not specifically find each of the three elements of perjury, as the Court deemed the "preferable" practice and as other district courts have done in *Dunnigan's* wake. *See, e.g., United States v. Keith,* 42 F.3d 234, 240–41 (4th Cir.1994) (quoting district court's opinion); *United States v. Webster,* 54 F.3d 1, 8–9 (1st Cir.1995). Nor did the district court make a single global finding that encompassed the three essential elements as the district court had done in *Dunnigan* itself. *See supra* note 2; *see also United States v. Castner,* 50 F.3d 1267, 1278–79 (4th Cir.1995). Therefore, we must vacate the imposition of the two-level enhancement for obstruction of justice and remand for resentencing.

■ We are aware, of course, that remand in this case might appear an empty formality. To be sure, the great likelihood is that the district court will reimpose the same sentencing enhancement after making the specific findings that *Dunnigan* requires. But that is not our judgment to make.[3] To ensure that imposition of a § 3C1.1 sentencing enhancement would not be automatic whenever the convicted defendant had exercised her constitutional right to testify in her own behalf at trial, the Supreme Court emphasized in *Dunnigan* that, "[w]hen contested, the elements of perjury must be found with the specificity we have stated." —— U.S. at ——, 113 S.Ct. at 1118. Accordingly, we join other circuits that have declined to infer such findings when they were not made

---

**2.** The district court in *Dunnigan* had explicitly stated that it "finds that *the defendant was untruthful at trial with respect to material matters* in this case. [B]y virtue of her failure to give truthful testimony on material matters *that were designed to substantially affect the outcome of the case,* the court concludes that the false testimony at trial warrants an upward adjustment by two levels." —— U.S. at ——, 113 S.Ct. at 1117 (quoting district court opinion; emphasis added by Supreme Court).

**3.** Even where, here as in *Dunnigan, see* —— U.S. at ——, 113 S.Ct. at 1114, the allegedly perjurious testimony includes the defendant's flat denial of involvement in the offenses charged, the defendant's subsequent conviction by a jury does not require the district court to find even the first element necessary to support a sentencing enhancement for perjury—that the defendant's sworn testimony was false. After all, a district court might conclude that the evidence was sufficient to permit a jury to find guilt beyond a reasonable doubt, yet not itself be convinced of the defendant's guilt, even by a preponderance. By requiring the sentencing court to make express *independent* findings, *Dunnigan* helps to assure that the court does not mistakenly believe that a jury's verdict can itself establish that the defendant's testimony on a material issue—even on the ultimate issue—was false (let alone that its falsity was willful).

with the specificity stated in *Dunnigan,* and have remanded. *See, e.g., United States v. Scotti,* 47 F.3d 1237, 1251–52 (2d Cir.1995); *United States v. Tracy,* 989 F.2d 1279, 1289–90 & n.9 (1st Cir.1993), *cert. denied,* —— U.S. ——, 113 S.Ct. 2393, 124 L.Ed.2d 294 (1993).

### C.

Smith argues next that the district court erred in denying his motion for a new trial. Federal Rule of Criminal Procedure 33 provides in relevant part:

> The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice.... A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment.... A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7–day period.

Smith predicated his motion for a new trial on both "newly discovered evidence" and "other grounds." Regardless of the heading, the substantive basis is the same—that the investigator's potential conflict of interest rendered the performance of Smith's trial counsel ineffective. The government argues that the district court lacked jurisdiction to hear Smith's motion because it was filed out of time and, in the alternative, that the motion was properly denied on the merits.

■ Because the time limits set forth in Rule 33 are jurisdictional, *see* 3 Charles A. Wright, *Federal Practice and Procedure* § 558 n.1 (2d ed. 1982), it is clear that Smith's motion was timely if it was properly predicated on "newly discovered evidence" and that it was out of time if it could only be justified "on other grounds." Also, the government does not dispute, and we accept as true that Smith did not learn of Investigator Livingston's employment with the Sheriff's department—and therefore of his attorney's potential conflict of interest—until after trial. The question, then, is whether "newly discovered evidence" includes newly discovered *information* that would support an ineffective assistance claim.

In recently addressing this very question, we observed that "[a]lthough the Fourth Circuit has not ruled on the issue, the majority of Circuits have held that information giving rise to ineffective assistance claims does not constitute newly discovered evidence for purposes of Rule 33." *United States v. Stockstill,* 26 F.3d 492, 497 n.9 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 345, 130 L.Ed.2d 302 (1994). In *Stockstill* we agreed with the government "that Stockstill's claims of ineffective assistance of counsel should be raised in the first instance in a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255," *id.* at 497, and remanded for the district court to treat Stockstill's new trial motion as a § 2255 motion. We did not, however, expressly rule whether a motion for new trial for reason of ineffective assistance of counsel could ever be heard within the extended time period reserved for motions based on "newly discovered evidence." Indeed, we appeared to suggest that we would have reviewed Stockstill's claim of ineffective assistance of counsel if only the district court had held a hearing to develop Stockstill's allegations regarding his attorney's conflict of interest.

■ Because of the possibly ambiguous import of our decision in *Stockstill,* we expressly confirm today that information supporting an ineffective assistance claim is not "evidence" within the meaning of Rule 33 and, therefore, that a motion for a new trial predicated on ineffective assistance of counsel must be brought, if at all, within seven days of judgment regardless of when the defendant becomes aware of the facts which suggested to her that her attorney's performance may have been constitutionally inadequate. A district court's lack of power to entertain a Rule 33 motion alleging ineffective assistance of counsel filed after seven days from judgment is not dependent upon whether the record amassed by the time of the motion would permit satisfactory resolution by the district court and adequate review on appeal.

■ As the Fifth Circuit explained in *United States v. Ugalde,* 861 F.2d 802, 807–10 (5th Cir.1988) (Higginbotham, J.), *cert. denied,* 490 U.S. 1097, 109 S.Ct. 2447, 104

L.Ed.2d 1002 (1989), the reasons for this rule are straightforward.[4] First, the avowed justification of long standing for the more generous treatment afforded new trial motions based on newly discovered evidence simply does not apply to new trial motions alleging ineffective assistance of counsel. Under the predecessor to the Federal Rules of Criminal Procedure, defendants enjoyed sixty days from judgment to move for a new trial on the basis of newly discovered evidence and only three days otherwise. Fed.R.Crim.App. II. The Supreme Court observed that the "extraordinary length of time" permitted for the former type of motion was "designed to afford relief where, despite the fair conduct of the trial, it later clearly appears to the trial judge that, because of facts unknown at the time of trial, substantial justice was not done." *United States v. Johnson*, 327 U.S. 106, 112, 66 S.Ct. 464, 467, 90 L.Ed. 562 (1946). When Rule 33 was adopted in 1944, the Advisory Committee recommended that time limits upon new trial motions based on newly discovered evidence be eliminated. The Committee and its supporters reasoned that a new trial should always be available when a criminal defendant can introduce new evidence tending to demonstrate his actual innocence. *See* 3 Wright, *Federal Practice and Procedure* § 558, at 362–63 & nn.7–8. Although the Supreme Court rejected the Advisory Committee's proposal, and instead imposed a two-year limit on motions based

on newly discovered evidence, the basic rationale for extending greater latitude to motions based on newly discovered evidence remains the same: to enable the district court to afford relief when new information bolsters a claim of actual innocence. That rationale does not justify application of the longer time limit to new trial motions based solely on allegations of ineffective assistance of counsel.

 Second, and without reference to the particular purposes actually underlying Rule 33, a defendant's ability to raise her ineffective assistance claims in a collateral challenge under § 2255 makes it unnecessary that she also be afforded two years to advance the same claim by a motion for a new trial. This is especially true in light of the fact that ineffective assistance claims are governed by the same standard whether raised via a motion for new trial or on federal habeas. *Strickland v. Washington*, 466 U.S. 668, 697–98, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). Third, the very language of the rule suggests that, in order for a defendant's motion to come within the two-year time limit, that which is "newly discovered" must be *evidence* that would be admissible were a new trial to be granted. Otherwise, the rule would more naturally refer to "newly discovered *facts*" or "newly discovered *information*."

---

4. While noting our agreement with the Fifth Circuit, we should also acknowledge that the consensus among the circuits is perhaps not as great as we indicated in *Stockstill*. While it is true that all the cases cited in *Stockstill* held Rule 33 motions based on alleged ineffective assistance of counsel time-barred, all but *Ugalde* strongly emphasized that the factual bases for the ineffective assistance argument were *not* newly discovered. *See United States v. Laird*, 948 F.2d 444, 446 (8th Cir.1991) ("At the time of trial, appellant was aware of all the information upon which the claim of ineffective assistance is based. Thus, the information about the performance of defense counsel was not 'newly discovered evidence' within the meaning of Fed.R.Crim.P. 33.''); *United States v. Seago*, 930 F.2d 482, 489–90 (6th Cir.1991) ("concluding that evidence of ineffective assistance of counsel is not newly discovered evidence for purposes of a motion for new trial where the facts supporting the claim were within the defendant's knowledge at the time of trial"); *United States v. Lema*, 909 F.2d 561, 565 (1st Cir.1990); *United States v. Miller*,

869 F.2d 1418, 1421 (10th Cir.1989); *United States v. Dukes*, 727 F.2d 34, 39–40 (2d Cir. 1984); *United States v. Lara–Hernandez*, 588 F.2d 272, 275 (9th Cir.1978); *United States v. Ellison*, 557 F.2d 128, 133 (7th Cir.), *cert. denied*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977). Consequently, the negative implication of those cases is that a motion for new trial based on a claim of ineffective assistance *would* be deemed a motion based on "newly discovered evidence" for purposes of Rule 33's time limits *if* (as here) the facts supporting the claim are newly discovered. Indeed, as we observed in *Stockstill*, at least one circuit has so held. *See, e.g., United States v. Brown*, 476 F.2d 933, 935 (D.C.Cir. 1973) (holding that a motion for new trial alleging ineffective assistance of counsel is based on "newly discovered evidence" for purposes of Rule 33's time limits so long as the evidence in support of the ineffective assistance claim had not previously been brought to the district court's attention, even if it had been known to the defendant); *see also United States v. Kladouris*, 739 F.Supp. 1221, 1225 (N.D.Ill.1990).

Our only hesitation in concluding that Smith's new trial motion was untimely arises from the fact that the slate in this circuit concerning the variety of claims that can support a new trial motion based on newly discovered evidence is not entirely blank. It is true that we have never previously resolved the precise question at issue both here and in *Stockstill:* whether information giving rise to ineffective assistance claims can constitute newly discovered evidence for purposes of Rule 33. But we have addressed the broader question whether "newly discovered evidence" for purposes of Rule 33 is limited to evidence that would have been admissible at the recently concluded trial (as opposed to evidence that might be admissible in a collateral proceeding challenging the fairness of the actual trial). In *Holmes v. United States,* 284 F.2d 716, 719 (4th Cir. 1960), we held that "newly discovered evidence" could include information giving rise to a claim of improper communication of prejudicial information by a court official to the jury (so long, of course, as that information was newly discovered). *Accord, e.g., United States v. Endicott,* 869 F.2d 452, 457 (9th Cir.1989); *Richardson v. United States,* 360 F.2d 366, 368 (5th Cir.1966); *Rubenstein v. United States,* 227 F.2d 638, 642 (10th Cir.1955), *cert. denied,* 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 858 (1956).

Although it is not readily apparent why new trial motions based on a claim of jury tampering should qualify as motions based on "newly discovered evidence" while motions claiming ineffective assistance of counsel should not,[5] we do not believe that *Holmes* compels any particular result in this case. Importantly, *Holmes* did not purport to advance any general test regarding when a new trial motion might qualify as one based on newly discovered evidence. Perhaps the jury tampering situation constitutes a *sui generis* exception to the generally persuasive principle that "newly discovered evidence" is limited to evidence that would be admissible at a trial on the merits. Ultimately, we believe that the result in *Holmes* does not undermine the result we reach today so much as the reasons for refusing to include claims of ineffective assistance as motions for new trial based on newly discovered evidence cast doubt on the wisdom of the result we reached in *Holmes.* Of course, the question whether a new trial motion for reason of improper jury contact may be treated as one based on newly discovered evidence, and therefore considered by the district court if filed after seven days from judgment, is not here presented.

▬▬ Finally, in light of today's holding, we briefly summarize the proper means of advancing ineffective assistance claims in this circuit. They are much the same as the Seventh Circuit recently elaborated in *United States v. Taglia,* 922 F.2d 413 (7th Cir. 1991) (Posner, J.), *cert. denied sub nom. McDonnell v. United States,* 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). A claim of ineffective assistance of counsel may be brought as a motion for new trial based on "other grounds" under Fed.R.Crim.P. 33. *United States v. Woods,* 812 F.2d 1483 (4th Cir.1987). Such a motion may be filed regardless of whether the bases for the claim

---

**5.** In *Ugalde,* 861 F.2d at 808, the Fifth Circuit proposed a pragmatic explanation for some courts' willingness to entertain claims of jury tampering raised in a new trial motion filed outside of the narrow time limits governing motions based on "other grounds." The rationale is essentially one of necessity: because evidence of jury tampering is not likely to come to light immediately and because, some courts held, claims of jury tampering are not cognizable in a collateral challenge to conviction (and, we might add, because such a claim cannot be vindicated on direct appeal absent a developed factual record), a claim of jury tampering must be shoehorned into a new trial motion based on newly discovered evidence if it is ever to be heard at all.

Whatever the soundness of that explanation in other circuits, we are skeptical that it accounts for our decision in *Holmes.* We have often recognized that a claim of jury tampering implicates the Sixth Amendment right to an impartial jury and therefore *is* cognizable on habeas corpus, *see, e.g., Stockton v. Virginia,* 852 F.2d 740, 743–44 (4th Cir.1988), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989); *Ladd v. South Carolina,* 415 F.2d 870 (4th Cir.1969), *cert. denied,* 397 U.S. 1049, 90 S.Ct. 1384, 25 L.Ed.2d 663 (1970), and have found no reason to believe that our decision in *Holmes* proceeded on a contrary assumption. *Contra Zachary v. United States,* 275 F.2d 793, 796 (6th Cir.) (indicating that a new trial motion is the sole appropriate vehicle for relief from jury tampering), *cert. denied,* 364 U.S. 816, 81 S.Ct. 46, 5 L.Ed.2d 47 (1960); *Rubenstein,* 227 F.2d at 642 (same).

are evident in the trial record. *See, e.g., Taglia,* 922 F.2d at 417; *United States v. Logan,* 861 F.2d 859, 863 (5th Cir.1988); *United States v. Pinkney,* 543 F.2d 908, 915 (D.C.Cir.1976). In either event, of course, it must be filed within seven days of the verdict (or within such further time as may, within that period, be fixed). Just as the district court has broad discretion in resolving a new trial motion, *United States v. Arrington,* 757 F.2d 1484, 1486 (4th Cir.1985), so too does it enjoy discretion whether to hold an evidentiary hearing on the motion. *United States v. Sands,* 968 F.2d 1058, 1066 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 987, 122 L.Ed.2d 139 (1993); *United States v. Hedman,* 655 F.2d 813, 814 (7th Cir.1981).

■ After the period for new trial motions based on anything other than newly discovered evidence has expired, a new trial motion based on ineffective assistance of counsel will not lie, for, as we hold today, facts giving rise to an ineffective assistance claim do not count as "evidence" for purposes of Rule 33's two-year time limit. Accordingly, a defendant who alleges ineffective assistance of counsel but fails to file a timely motion for a new trial is left with two options. We have repeatedly admonished that a defendant may raise her claim of ineffective assistance of counsel in the first instance on direct appeal if and only if it "conclusively appears" from the record that her counsel did not provide effective assistance. Otherwise, she must raise her claim in the district court by a collateral challenge pursuant to 28 U.S.C. § 2255, rather than in the appellate court by direct appeal. *United States v. Matzkin,* 14 F.3d 1014, 1017 (4th Cir.1994); *United States v. Williams,* 977 F.2d 866, 871 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1342, 122 L.Ed.2d 725 (1993); *United States v. DeFusco,* 949 F.2d 114, 120–21 (4th Cir.1991), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992).

### III.

For the foregoing reasons, we conclude that the supplemental jury instruction was proper. Additionally, we have considered Smith's further assignments of trial error [6] and find them to be without merit. We therefore affirm Smith's conviction. We also hold that the district court lacked jurisdiction to entertain Smith's motion for a new trial and, on that basis, affirm its denial of that motion. Because his motion for a new trial was untimely, Smith's arguments concerning ineffective assistance of counsel because of conflict of interest are properly heard only in a separate proceeding seeking collateral relief pursuant to 28 U.S.C. § 2255. Lastly, we conclude that the district court did not make sufficient factual findings of perjury to support its imposition of a two-level sentencing enhancement for obstruction of justice. We vacate the sentence imposed and remand for resentencing.

*SO ORDERED.*

---

6. Smith's additional arguments are that the district court erred in admitting into evidence the cocaine seized in July 1993 on the grounds that there may have been a break in the chain of custody, that the evidence was insufficient to sustain a guilty verdict, and that the district court erred in calculating the amount of cocaine for purposes of sentencing.