Vacated by Supreme Court, January 24, 2005

**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

ERIC MARTIN VANBUREN,
  *Defendant-Appellant.*

No. 02-4877

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CR-00-66)

Argued: January 21, 2004

Decided: May 13, 2004

Before WILKINS, Chief Judge, and NIEMEYER and
TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Peter Randolph Roane, LAW OFFICE OF DAVID L. HEILBERG, Charlottesville, Virginia, for Appellant. Ray B. Fitzgerald, Jr., Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** David L. Heilberg, Charlottesville, Virginia, for Appellant. John L. Brownlee, United States Attorney, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Eric Martin VanBuren was convicted of conspiring to distribute more than 50 grams of cocaine base and he was sentenced to life imprisonment. On appeal, VanBuren raises three challenges to his sentence: (1) whether the district court erroneously determined the drug quantity upon which to set VanBuren's base offense level; (2) whether the court erroneously enhanced his offense level based on VanBuren's leadership role in the conspiracy; and (3) whether the court had a sufficient basis for imposing a sentencing enhancement for obstruction of justice. We reject VanBuren's challenges to his base offense level and the enhancement based on his leadership role. We also affirm the application of the obstruction of justice enhancement to the extent it is based upon a finding that VanBuren gave perjured testimony at trial. Accordingly, we affirm VanBuren's sentence.[1]

I.

As a result of his involvement in a drug distribution conspiracy that operated in Culpeper, Virginia, from January 1995 until the fall of 2000, VanBuren was convicted by a jury of conspiracy to possess with intent to distribute and to distribute more than 50 grams of crack cocaine. *See* 21 U.S.C.A. §§ 841(a)(1), 846 (West 1999). At trial, the government presented evidence that VanBuren obtained large quanti-

---

[1]VanBuren also challenges the sufficiency of the evidence to support his conviction. After reviewing the parties' written submissions and considering the arguments of counsel, we conclude that there was more than sufficient evidence to sustain the verdict. *See United States v. Myers*, 280 F.3d 407, 415 (4th Cir. 2002) (A challenge to the sufficiency of the evidence must be rejected if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (internal quotation marks omitted)). Because this issue clearly lacks merit, we affirm VanBuren's conviction summarily.

ties of crack in the Washington, D.C., metropolitan area, which he moved to the Culpeper area for distribution. Several witnesses testified that they routinely obtained various amounts of crack from Van-Buren or saw VanBuren in possession of various amounts of crack. VanBuren categorically denied selling or distributing cocaine in any form and claimed that his trips to Culpeper were taken essentially for the purpose of sexual adventure.

The Presentence Investigation Report ("PSR") attributed 205 kilograms of crack to VanBuren based on trial testimony from several of VanBuren's co-conspirators, resulting in a recommended base offense level of 38. *See* United States Sentencing Commission, *Guidelines Manual* ("U.S.S.G.") § 2D1.1(c)(1) (Nov. 2000). The PSR recommended a two-level upward adjustment for VanBuren's leadership role in the conspiracy, based upon testimony that VanBuren recruited his brother and other individuals to transport and sell narcotics he supplied them. *See* U.S.S.G. § 3B1.1(c). The PSR also recommended a two-level increase in VanBuren's offense level for obstruction of justice. *See* U.S.S.G. § 3C1.1. This enhancement was based on two factual predicates: (1) that VanBuren perjured himself during his testimony at trial; and (2) that he provided a false name and date of birth to law enforcement officers on December 30, 2001, the date of his arrest. The adjusted offense level, as calculated by the PSR, was level 44, which mandates the imposition of a life sentence under the Sentencing Guidelines, regardless of the defendant's criminal history category.[2]

After considering VanBuren's objections, the district court determined, as recommended by the PSR, that VanBuren's adjusted offense level was 44 with a resulting sentencing range of life imprisonment. In its Statement of Reasons accompanying its formal judgment, the court indicated that it had "adopt[ed] the factual findings and guideline application in the presentence report." J.A. 492.

---

[2]VanBuren also received a two-level increase for possession of a dangerous weapon based on trial testimony that he generally carried a handgun while operating his crack distribution business. *See* U.S.S.G. § 2D1.1(b)(1). VanBuren does not challenge this enhancement.

On appeal, VanBuren first argues that the district court incorrectly attributed to him 205 kilograms of crack cocaine, resulting in an inflated base offense level of 38. Based on the jury's verdict that he conspired to distribute "more than 50 grams," as charged in the indictment, VanBuren contends that he should have been sentenced for "[a]t least 50 G but less than 150 G of Cocaine Base," which translates to a base offense level of 32. U.S.S.G. § 2D1.1(c)(4). Second, VanBuren contends that the district court failed to make sufficient factual findings to support its imposition of a two-level enhancement for a leadership role in the conspiracy pursuant to U.S.S.G. § 3B1.1(c). Third, VanBuren argues that there was insufficient factual support for either of the recommended bases for the two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1.

## II.

We turn first to VanBuren's challenge to the district court's use of 205 kilograms to determine the base offense level. The government must prove by a preponderance of the evidence the quantity of drugs attributable to a defendant for purposes of sentencing. *See United States v. Gilliam*, 987 F.2d 1009, 1013 (4th Cir. 1993). In satisfying this burden, the government may rely upon information set forth in the PSR unless the defendant demonstrates that the information is inaccurate or unreliable. *See id.* at 1014; *United States v. Carter*, 300 F.3d 415, 425 (4th Cir. 2002) (per curiam) (A defendant "objecting to drug quantities as set forth in the Presentence Report . . . has an affirmative duty to show that the information contained in the report is inaccurate or unreliable."). Once a defendant has objected to the factual accuracy of a given finding in the PSR, Federal Rule of Criminal Procedure 32(i)(3)(B) is triggered: "[F]or any disputed portion of the presentence report or other controverted matter—[the court must] rule on the dispute or determine that a ruling is unnecessary . . . ." The district court, of course, can satisfy the requirement that it make a factual finding by "expressly adopt[ing] the recommended findings contained in the presentence report." *United States v. Morgan*, 942 F.2d 243, 245 (4th Cir. 1991). If the court "make[s] clear on the record that it has made an independent finding and that its finding coincides with the recommended finding in the presentence report," *id.*, we will not disturb these findings unless they are clearly erroneous. *See United States v. D'Anjou*, 16 F.3d 604, 614 (4th Cir. 1994).

At sentencing, VanBuren filed a *pro se* objection to the 205 kilogram drug quantity, arguing that the testimony at trial did not support such a finding. According to VanBuren, the largest quantity of crack that could have been attributed to him based on the evidence at trial was "no more than (181 kilos)." J.A. 500. On appeal, VanBuren continues to take the position that the district court used the 205 kilogram amount in error; however, his primary contention is not that the evidence is insufficient to support a finding of 205 kilograms. Instead, the primary focus of his argument is that the district court intended "to sentence [VanBuren] on what the jury found." J.A. 456. Because the jury found VanBuren guilty of conspiracy to distribute more than 50 grams of cocaine base, he argues that the district court was in fact making the finding that VanBuren's base offense level should have been 32, which applies to offenses involving "[a]t least 50 G but less than 150 G of Cocaine Base." U.S.S.G. § 2D1.1(c)(4). Alternatively, VanBuren contends that the record is ambiguous as to the quantity of crack found by the district court and that any such ambiguity should be resolved in his favor. In other words, VanBuren believes that it is not clear from the record whether the court intended to adopt the quantity used in the PSR or the amount alleged in the indictment and found by the jury.

The district court very clearly adopted the drug quantity set forth in the PSR. After considering VanBuren's objections, the district court sentenced him in a manner consistent with the PSR's recommendations. Moreover, in the Statement of Reasons accompanying the judgment entered by the district court, the court expressly "adopt[ed] the factual findings . . . in the presentence report." J.A. 492. *See United States v. Walker*, 29 F.3d 908, 912 (4th Cir. 1994) (holding Rule 32 requirements satisfied where the district court sentenced the defendant "consistently with the PSR's recommendations" and indicated it was adopting the PSR's findings on its "Statement of Reasons" form accompanying the judgment).

The court's statement that it intended to sentence VanBuren in accordance with the jury's verdict was not inconsistent with the adoption of the PSR or the actual sentence imposed in this case. The amount determined by the jury (50 grams or more) was significant only because it set the statutory maximum penalty; as long as the sentence imposed does not exceed the statutory maximum, a district

court may attribute more crack to the defendant than specified in the indictment. *See United States v. Kinter*, 235 F.3d 192, 201 (4th Cir. 2000); *see also United States v. Johnson*, 335 F.3d 589, 591 (7th Cir. 2003) (per curiam).

The district court did not clearly err in attributing to VanBuren a quantity of crack sufficient to warrant a base offense level of 38. The threshold amount of crack cocaine required for the imposition of a base offense level of 38 is 1.5 kilograms. *See* U.S.S.G. § 2D1.1(c)(1). The testimony at trial was sufficient to support a factual finding attributing far more than 1.5 kilograms to VanBuren. Richard Shirley, who sold crack cocaine in the Culpeper area, testified that VanBuren supplied him with large quantities of crack — usually between one-half kilogram and one kilogram — on a weekly basis for nearly three years. Roy Samuels indicated that VanBuren fronted him crack on a regular basis for approximately one year; Samuels estimated that VanBuren supplied him with a total of four or five kilograms over the course of that year. Another crack dealer, Paul Brown, testified that he generally received from VanBuren one-half kilogram of crack every three to four days over a two-year period. This was just part of the evidence supporting the district court's findings of fact that put VanBuren far in excess of the 1.5 kilograms of crack necessary to trigger the application of a base offense level of 38. Moreover, VanBuren himself argued that the amount attributable to him, based on the trial testimony, was 181 kilograms, which of course puts him far above the 1.5 kilogram threshold.

In sum, we conclude that the district court satisfied its obligation to make independent findings of fact as to the drug quantity attributable to VanBuren by adopting the PSR's findings, and that these findings are not clearly erroneous.

### III.

VanBuren next challenges the two-level enhancement he received for a leadership role in the conspiracy. The Sentencing Guidelines require the sentencing court to impose a two-level enhancement where "the defendant was an organizer, leader, manager, or supervisor" in the conspiracy. U.S.S.G. § 3B1.1(c). Our review of the sentencing court's application of an offense level enhancement based on

the defendant's role in the offense of conviction is for clear error. *See United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002).

The PSR provided as follows: "Evidence in this case reveals the defendant was a leader in a conspiracy that brought over 200 kilograms of "crack" cocaine into Culpeper. He recruited his brother to transport cocaine to Culpeper, Virginia for other dealers to sell in street level quantities." J.A. 485. VanBuren's *pro se* submission, filed immediately prior to the sentencing hearing, stated merely that he "object[ed] to the adjustment for role in the offense." J.A. 505. Defense counsel did not raise this objection to the PSR prior to the hearing and did not refer to the leadership role enhancement during sentencing.

VanBuren now claims that the district court failed to satisfy its obligation under Rule 32(i)(3)(B) to rule on "any disputed portion of the presentence report." VanBuren objects to the PSR's finding that, based on the evidence at trial, he was a leader in the conspiracy, but he has never offered evidence to the contrary or specifically explained why the PSR was inaccurate or unreliable. VanBuren's "mere objection" to the PSR's findings, without more, is insufficient to put the PSR's findings into dispute. *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990); *cf. Gilliam*, 987 F.2d at 1013 ("[T]he Government carries its burden if a defendant fails to properly object to a recommended finding in a presentence report that the court determines to be reliable."). Because VanBuren failed to make the required affirmative showing that the PSR was inaccurate or unreliable, the district court was "free to adopt the findings of the [PSR] without more specific inquiry or explanation." *Terry*, 916 F.2d at 162 (internal quotation marks omitted). We affirm the imposition of a two-level leadership role enhancement to VanBuren's offense level.

IV.

Finally, VanBuren argues that he received the two-level obstruction-of-justice enhancement in error because the district court's findings did not adequately support the PSR's two recommended bases for applying the enhancement. First, with respect to the perjury basis, VanBuren argues that the court failed to specifically identify the portion of his testimony that was false or to determine

whether the purportedly false testimony was material to the proceedings. Second, VanBuren contends that the court's alternative basis for the enhancement — the false name and date of birth that VanBuren gave the arresting officers — does not constitute obstruction as defined by section 3C1.1 of the Sentencing Guidelines. Our review of factual determinations is for clear error while our review of legal questions is *de novo*. *See United States v. Singh*, 54 F.3d 1182, 1190 (4th Cir. 1995).

The Sentencing Guidelines prescribe a two-level upward adjustment if "the defendant willfully obstructed or impeded . . . the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction" and "the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1.

At the sentencing hearing, the district court did not refer to the fact that VanBuren supplied false information to law enforcement officers as a basis for applying the obstruction enhancement under section 3C1.1. As noted earlier, the district court explained in its Statement of Reasons accompanying its formal judgment that it adopted the factual findings and the guideline application contained in the PSR, which, in turn, determined that the obstruction enhancement was appropriate because VanBuren on the day of his arrest "provided law enforcement with a false name and date of birth." J.A. 485. Trial testimony established that VanBuren was detained on December 30, 2001, initially as a passenger in a vehicle that Pennsylvania State Police stopped for traffic violations. VanBuren told the arresting officers that his name was Christopher Darnel Johnson and gave a false date of birth. Later on the day of the arrest, officers learned through fingerprint analysis about VanBuren's true identity and the outstanding drug warrants for him.

VanBuren does not challenge the accuracy of this factual finding; rather, he argues that section 3C1.1 simply does not apply to his conduct. This presents a question of law that we review *de novo*. The Sentencing Commission's commentary on the guideline provides several examples of conduct that "ordinarily do[es] not warrant application" of an obstruction enhancement, including "providing a false name or identification document at arrest, except where such conduct

actually resulted in a significant hindrance to the investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1, application note 5(a).

We are unable to sustain the application of an enhancement under section 3C1.1 on this basis. The district court did not make a finding that VanBuren's provision of the false name and date of birth *significantly hindered* the investigation, nor is the impeding effect of the false information so clear in the record that we can make that determination ourselves. *See United States v. Banks*, 347 F.3d 1266, 1270 (11th Cir. 2003).

Nevertheless, we affirm the application of the obstruction enhancement on the alternative perjury basis. When a defendant objects to the imposition of an enhancement based on the defendant's trial testimony, the district court must determine that "the defendant when testifying under oath (1) gave false testimony; (2) concerning a material matter; (3) with the willful intent to deceive (rather than as a result of confusion, mistake, or faulty memory)." *United States v. Jones*, 308 F.3d 425, 428 n.2 (4th Cir. 2002); *see United States v. Dunnigan*, 507 U.S. 87, 94-95 (1993). An obstruction adjustment, however, is not automatically appropriate "every time a criminal defendant who testifies at trial is convicted." *United States v. Smith*, 62 F.3d 641, 647 (4th Cir. 1995). It is possible that "the defendant's specific statements on the stand were true, or were not intentionally false, or were not material." *Id.*

At the sentencing hearing, VanBuren asked for "specific statements that the Court would hold [him] responsible for testifying falsely under oath" and expressed doubt whether the district court had made such specific findings. J.A. 459. The district court, which had observed VanBuren's testimony denying ever selling drugs in any way, explained as follows:

> The court can make that finding. I recall his testimony . . .
> of course he denied that he was guilty of the charges. . . .
>
> His testimony for the most part . . . lacked credibility, and
> the jury certainly believed beyond a reasonable doubt — if
> they had any doubts that he was not telling the truth, they

couldn't have found him guilty. They believed he was guilty beyond a reasonable doubt, so inferentially they had to believe he was not telling the truth.

I certainly . . . thought he wasn't telling the truth. I couldn't believe anyone would be testifying in the manner that he did, which showed arrogance and disrespect for the intelligence of the jury to sit there and put the defense on that he offered. . . .

So I think there's no question he committed perjury during his trial, so the obstruction of justice points he should receive.

J.A. 460.

VanBuren concedes that this statement reflects the district court's finding that he testified falsely under oath and with the intent to deceive. He contends, however, that the district court's findings were insufficient because the court did not identify the specific testimony underlying the perjury finding and did not expressly find that this testimony concerned a material issue, as required by *Dunnigan. See* 507 U.S. at 94-95.

As we have observed more than once, *Dunnigan* does not require a specific finding addressing each perjury element — it observes that "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Id.* at 95; *see, e.g., United States v. Castner*, 50 F.3d 1267, 1279 (4th Cir. 1995); *Smith*, 62 F.3d at 647; *United States v. Stotts*, 113 F.3d 493, 498 (4th Cir. 1997). It is sufficient if "the district court make[s] a single global finding that encompasse[s] the three essential elements" of perjury. *Smith*, 62 F.3d at 647. In *Dunnigan* itself, the Court approved of the district court's findings which, rather than engaging in an analysis of each element, indicated that

the defendant was untruthful at trial with respect to material matters in this case. The defendant denied her involvement when it is clear from the evidence in the case as the jury

found beyond a reasonable doubt that she was involved in the conspiracy alleged in the indictment, and by virtue of her failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case, . . . the false testimony at trial warrants an upward adjustment by two levels.

507 U.S. at 91. By contrast, a district court's mere finding that the defendant "'falsely testified at trial'" is plainly insufficient to encompass all of the elements of perjury. *Stotts*, 113 F.3d at 498. Indeed, testimony can be false but not perjurious if the defendant's testimony sprang from confusion or mistake. *See also Smith*, 62 F.3d at 647 (unable to infer elements of perjury from simple denial of defendant's objection to the obstruction enhancement).

The district court's lack of specificity in its findings in this case presents a close question, and certainly the better procedure is to be specific. On the whole, however, we view the court's findings as closer to those at issue in *Dunnigan* than in *Stotts* or *Smith*. As Van-Buren acknowledges, the district court clearly found his testimony to be willfully false. VanBuren takes issue with the fact that the district court did not specifically identify the perjurious testimony. It is fairly apparent, however, that the district court was referring to VanBuren's categorical denial of any involvement in drug-related activities, the materiality of which was obvious — the only issue was whether Van-Buren distributed crack as part of the conspiracy alleged in the indictment.

Accordingly, while we cannot affirm the enhancement to the extent that it was based on the false information passed by VanBuren to law enforcement officers, we affirm the application of the two-level enhancement based on VanBuren's trial testimony.

## V.

For the foregoing reasons, we affirm VanBuren's conviction and sentence.

*AFFIRMED*