**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4611**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

EDUARDO PUENTES, a/k/a Carlos, a/k/a The Columbian,

                    Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr., District
Judge.  (8:08-cr-00043-AW-6)

Argued:  January 26, 2011           Decided:  March 1, 2011

Before MOTZ, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Marc Gregory Hall, HALL & CHO, PC, Rockville, Maryland,
for Appellant.  Christen Anne Sproule, OFFICE OF THE UNITED
STATES ATTORNEY, Greenbelt, Maryland, for Appellee.  **ON BRIEF:**
Rod J. Rosenstein, United States Attorney, Baltimore, Maryland,
for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Eduardo Puentes of conspiracy to violate the Mann Act for his role in a prostitution ring based in Prince Georges County, Maryland. The district court sentenced Puentes to 41 months in prison followed by three years of supervised release. Puentes appeals, challenging his conviction and sentence. We affirm.

I.

At a seven-day jury trial, the Government introduced evidence that Puentes conspired with others, including Aida Pereira, to transport at least one hundred women from out of state to Maryland for the purpose of employing them as prostitutes, in violation of the Mann Act, 18 U.S.C. § 371. The Government offered evidence of extensive phone records and transcripts from wiretapped phone conversations between the co-conspirators, as well as two handguns found in the home of Pereira, the leader of the conspiracy. Puentes testified on his own behalf, asserting his innocence.

At the conclusion of the trial, the district court gave the jury a willful blindness instruction. The jury returned a verdict finding Puentes guilty of the charged offense. In sentencing Puentes, the district court applied a two-level sentencing enhancement based on his false testimony at trial and

2

sentenced him to 41 months imprisonment, followed by three years supervised release. Puentes noted a timely appeal, asserting three arguments.

## II.

First, Puentes contends that the district court erred in admitting evidence of the two handguns. Puentes moved in limine to bar the admission of the handguns, which were found pursuant to a search of Pereira's home. Puentes contended that the guns lacked relevance and that their prejudice outweighed their probative value. Specifically, he maintained that the guns were neither directly connected to him nor recovered from properties related to him, and that the court should therefore prohibit their admission at his trial. The Government countered that the handguns were relevant to and probative of the conspiracy charge because evidence showed that the guns were a tool in furtherance of the conspiracy. The Government proffered eyewitness testimony that Puentes played a security role in defending the brothels from robbery and that a recorded call revealed Puentes referring to Pereira's guns as "toys" and discussing their whereabouts. The court admitted the handguns, determining that they were relevant and that their prejudicial effect did not outweigh their probative value.

3

A trial court possesses broad discretion in ruling on the admissibility of evidence, and we will not overturn an evidentiary ruling absent an abuse of discretion. See United States v. Hedgepeth, 418 F.3d 411, 418-19 (4th Cir. 2005). We need not reach the issues of relevance and prejudice, however, when the admission of the evidence in question is harmless. See United States v. Weaver, 282 F.3d 302, 313 (4th Cir. 2002) ("To properly answer the question before us, we need not discuss the merits of [the defendant's] claims [about relevance and prejudice] because the admission of the evidence was harmless."). We have frequently declined to decide whether evidence was properly admitted because its admission would be "nonetheless harmless." Hedgepeth, 418 F.3d at 421. This is such a case.

In determining whether the admission of evidence was harmless, we inquire whether it "is probable that the error could have affected the verdict reached by the particular jury in the particular circumstances of the trial." United States v. Simpson, 910 F.2d 154, 158 (4th Cir. 1990) (internal quotations omitted). In this case, three former prostitutes testified that Puentes worked with or otherwise assisted Pereira, whom they identified as the head of the prostitution ring. Two of them identified Puentes in court; one testified that Puentes delivered condoms and did accounting work for the prostitution

4

business.  Testimony and wiretap transcripts also demonstrated that Puentes rented the apartments that functioned as brothels; transported women who were working as prostitutes; served as a "lookout" to protect the brothels from robbery; purchased and insured three 15-passenger vans used to transport prostitutes between New York and New Jersey, where they lived, and Maryland, where they worked as prostitutes; purchased a car that Pereira used to "transport herself" and "pick up the women"; delivered condoms; and spoke about working with Pereira's prostitution ring in order to "pay off his debts."  Wiretap evidence further revealed that Puentes was in regular contact with Pereira and the other co-conspirators throughout the period of the conspiracy.

In short, the Government presented a very strong case establishing Puentes's guilt.  The handgun evidence "was harmless in light of the overwhelming evidence against" Puentes. Weaver, 282 F.3d at 314.

### III.

Puentes also maintains that the district court erred in its jury instruction.  Over his objection, the court gave the jury the following willful blindness instruction:

> You may infer that the defendant acted knowingly from circumstantial evidence or from proof that a defendant deliberately closed his eyes to what would otherwise

5

have been obvious to him.  Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of that fact.

On appeal, Puentes argues that the facts of his case do not warrant the instruction.

"The decision of whether to give a jury instruction and the content of an instruction are reviewed for abuse of discretion." United States v. Abbas, 74 F.3d 506, 513 (4th Cir. 1996).  "A willful blindness instruction is warranted where . . . the defendant asserts a lack of guilty knowledge but the evidence supports an inference of deliberate ignorance."  United States v. Mir, 525 F.3d 351, 358-59 (4th Cir. 2008) (internal quotations omitted).

A willful blindness instruction is appropriate if:  (1) the defendant "asserted a lack of guilty knowledge," and (2) "the evidence supported an inference of deliberate ignorance." Abbas, 74 F.3d at 514.  If both predicates are present, a "jury could find that [the defendant] consciously closed his eyes to the fact that he was involved in" the charged crime, and the trial court does "not err in giving the jury a willful blindness instruction." Id.

Puentes argues that the willful blindness instruction was unwarranted in his case because he never asserted a lack of guilty knowledge.  He maintains that he "admit[ted] knowledge of

6

Pereira's prostitution business and simply denie[d] his involvement." Br. of Appellant at 15.

The record offers no support for this contention. Rather, at trial, Puentes repeatedly, and under oath, asserted his lack of guilty knowledge. He testified that he did not conclude that Pereira was in the business of prostitution until "around 2005."[*] He conceded that he had heard rumors that Pereira was in the prostitution business, but that Pereira denied this and he believed her when she told him that she had a "small housecleaning company." Indeed, in response to questions at trial as to whether he "den[ied] any knowledge whatsoever about Ms. Pereira's criminal conduct," Puentes replied in the affirmative, claiming that he "realize[d] too late what she was doing."

The evidence also supports an inference of Puentes's deliberate ignorance. According to his own testimony, Puentes allowed Pereira to move in with him, saw huge boxes of condoms at their apartment, but claimed not to know what they were, and purchased large passenger vans for Pereira's use but "never . . . ask[ed] her" their purpose.

In sum, as in Abbas, "there was sufficient evidence from which the jury could find that [the defendant] consciously

_____

[*] The jury convicted Puentes of conspiracy to violate the Mann Act between September 2003 and November 2005.

7

closed his eyes," 74 F.3d at 514, and the district court therefore did not abuse its discretion in giving the willful blindness instruction.

IV.

Finally, Puentes contends that the court erred in applying a two-level sentencing enhancement for obstruction of justice under United States Sentencing Guidelines § 3C1.1 based on Puentes's false testimony at trial. Puentes argues that United States v. Dunnigan, 507 U.S. 87 (1993), and United States v. Smith, 62 F.3d 641 (4th Cir. 1995), obligated the sentencing court to make specific findings as to elements of perjury in order to support the enhancement, which it failed to do.

Puentes misreads the law. Although Dunnigan and Smith hold that a "district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition," they explicitly direct that such findings must be made only if the defendant objects before the trial court to the obstruction of justice enhancement. Smith, 62 F.3d at 647 (quoting Dunnigan, 507 U.S. at 95). In this case, Puentes did not object before the trial court to the enhancement. Accordingly, Smith and Dunnigan offer him no support.

8

Because Puentes failed to object to the enhancement in the district court, we review for plain error. See United States v. Rooks, 596 F.3d 204, 212 (4th Cir. 2010). Under the plain error standard, Puentes bears the burden of showing that (1) an error occurred, (2) the error was plain, and (3) it affected his substantial rights. See United States v. Olano, 507 U.S. 725, 732 (1993). If he makes such a showing, the correction of such error lies within our discretion, which we do "not exercise . . . unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation marks and alterations omitted).

Here, Puentes has demonstrated no error. We have held that to apply the obstruction of justice enhancement based on false testimony, a sentencing court must find three elements: "(1) the defendant gave false testimony, (2) concerning a material matter, (3) with the willful intent to deceive (rather than as a result of confusion, mistake, or faulty memory)." United States v. Sun, 278 F.3d 302, 314 (4th Cir. 2002) (citing Smith, 62 F.3d at 646).

In this case, the sentencing court made specific findings as to Puentes's false testimony at trial, concluding that his testimony was "incredible" and "contrary to what the transcript reflected." The court also made implicit findings as to the materiality of Puentes's misstatements, for example when Puentes

9

"never recalled picking up any money or making any deliveries" despite that "the transcript reflected him significantly involved in the business." Finally, the court found Puentes's deception intentional, i.e., "just a lie." The court concluded that Puentes was simply "not telling the truth" when he "flat out denied" his participation in the prostitution business. Having made the requisite findings, the district court did not err -- plainly or otherwise -- in applying the two-level sentencing enhancement for obstruction of justice.

V.

For all of these reasons, the judgment of the district court is

AFFIRMED.