**UNITED STATES of America, Plaintiff,**

*v.*

**Dimitrios KLADOURIS, Defendant.**

**No. 89 Cr 786.**

United States District Court,
N.D. Illinois, E.D.

June 13, 1990.

---

Normand Cohen, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Dimitrios Kladouris first appeared before this court on November 3, 1989. He was to enter a guilty plea that day to a charge of interfering with a federal agent. This court declined to take the plea, because on its examination of Mr. Kladouris, it appeared that he had a valid defense to the charge, of which he was not aware. The case was tried on November 28 and 29, 1989. The jury found Mr. Kladouris guilty on November 29.

Immediately after the trial, this court granted defense counsel until January 7 to file his post-trial motions. They were timely filed, and this court denied the motions for acquittal and a new trial on February 1, 1990. On February 6, Mr. Kladouris retained a new attorney, Normand Cohen. Mr. Cohen immediately requested transcripts of the pre-trial and trial proceedings. He received them on February 22, and upon review, determined that Mr. Kladouris had a colorable "ineffective assistance of counsel" claim.

Because sentencing was set for February 26, 1990, Mr. Cohen requested additional time to prepare a motion for a new trial based on his opinion that Mr. Kladouris' former counsel had been ineffective. This court granted Mr. Cohen leave to file an amended post-trial motion by March 26, 1990, and Mr. Cohen did file the motion on that date. Mr. Kladouris' new counsel moved for a new trial on two grounds; ineffective assistance of counsel and newly discovered evidence. The government claims that the first ground is untimely, and the second inadequate. This court disagrees, and grants Mr. Kladouris' motion for a new trial.

## FACTS

On September 17, 1989, Robert Reidell, an Immigration and Naturalization Service (INS) agent entered Mr. Kladouris' restaurant in New Holland for the purpose of finding and arresting certain persons who he believed were in this country illegally, and were employed by Mr. Kladouris. At the time Agent Reidell was moving through the restaurant, Mr. Kladouris was in an area to the back of the restaurant, near the kitchen, where he would not normally expect to see members of the public.

The parties differ as to what happened next. Mr. Kladouris claims that the unidentified agent was chasing his two employees out of the restaurant, and Mr. Kladouris stepped in to stop what he thought was an unlawful intrusion into his place of business. Agent Reidell, on the other hand, claims that he did identify himself to Mr. Kladouris, and Mr. Kladouris assaulted him in an attempt to thwart the arrest of his employees.

When Mr. Kladouris appeared before this court on November 3, 1989 to enter his guilty plea, this court followed its usual practice and questioned Mr. Kladouris about the circumstances which led to the charge, and his decision to plead guilty. The facts, as set forth by Mr. Kladouris, simply did not permit this court to accept a guilty plea. Mr. Kladouris clearly believed himself to be innocent of the charged crime.[1] Furthermore, Mr. Kladouris' version of the facts demonstrated to this court that he had a legitimate defense available.[2]

---

1. Mr. Kladouris' version of the facts was as follows: "Two people came in the restaurant. * * * And I asked them who they were. * * * And the people, they don't give me answer. * * * I asked them who they was, they says 'Get out of my way,' ... and then I step in front of them and then before I know they put my handcuffs on and they sent me to jail." Transcript of proceedings before this court, November 3, 1989, pp. 23–24.

2. Even a brief review of the cases interpreting the statute under which Mr. Kladouris was charged, 18 U.S.C. § 111(a)(1) reveals that the defense of "justification" (available when the defendant has made an honest mistake of fact about the federal officer's official status, and would have been justified in committing the assault had the victim not been a federal officer, thus negating the criminal intent required by § 111) is available in circumstances such as those described by Mr. Kladouris. See *U.S. v.*

For these reasons, this court, with Mr. Kladouris' approval, refused to take the plea. A trial date was set, and the government requested a jury. The record now before the court demonstrates that Mr. Kladouris' trial counsel was either unaware of the availability of the defense, or had simply neglected to inform his client of it.[3]

It is not clear that Mr. Kladouris' trial counsel ever came to understand the nature of the defense available to Mr. Kladouris. He failed to tender an instruction apprising the jury of its availability, and he did not elicit testimony which bore directly upon it. Nonetheless, because Mr. Kladouris did offer some testimony which could have supported his defense, this court prepared a "justification" instruction and delivered it to the jury.

Mr. Kladouris makes two arguments in support of his motion for a new trial; that he is entitled to a new trial because of newly discovered evidence (impeaching the government's chief witness, Agent Reidell) and because his trial counsel was ineffective. This court will address each argument in turn.

### Agent Reidell's Civil Suit

■ Agent Reidell filed a civil suit against Mr. Kladouris (seeking to recover for injuries he allegedly suffered during the incident with Mr. Kladouris) about a week after the jury returned its verdict in the criminal case. In fact, he was considering or even planning filing the suit at the time he testified against Mr. Kladouris. Mr. Kladouris argues that this is "newly discovered evidence" which justifies an order granting a new trial.

Rule 33 of the Federal Rules of Criminal Procedure provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice. * * * A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment...." Generally, the discovery of evidence which impeaches a prosecution witness is not sufficient to merit a new trial on the basis of "newly discovered evidence". *U.S. v. Kuzniar*, 881 F.2d 466, 470 (7th Cir.1989).

The standard for granting a new trial based upon newly discovered evidence in this circuit requires a defendant to show that the new evidence "(1) came to his or her knowledge only after trial; (2) could not have been discovered sooner had the defendant exercised due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a trial." *U.S. v. Tucker*, 836 F.2d 334, 336 (7th Cir.1988) (citations omitted).

Evidence that, at the time he testified against Mr. Kladouris in the criminal matter, Agent Reidell intended to file a civil suit against Mr. Kladouris would certainly have called Agent Reidell's credibility into question.[4] The jury could have used that evidence to infer that Agent Reidell had a motive to lie—to further his plan to collect money from Mr. Kladouris. Furthermore (despite the advice Agent Reidell claims to have received from his attorney, see Rei-

---

*Hillsman*, 522 F.2d 454, 460 (7th Cir.1975), *U.S. v. Grimes*, 413 F.2d 1376 (7th Cir.1969), *U.S. v. Plummer*, 789 F.2d 435, 437–438 (6th Cir.1986), *U.S. v. Alvarez*, 755 F.2d 830, 843 (11th Cir. 1985).

**3.** Mr. Kladouris' attorney sent Mr. Kladouris a letter stating that "the government doesn't even have to prove that they notified you that they were special agents, only that they were in fact, special agents and by you touching them, you technically interfered with their performance of their duties." Later in the same letter, he states "[a]ll that they have to prove is that they were agents for the immigration department and you touched their body."

**4.** It also constitutes *Brady* material (*Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963)), which the government is required to turn over to the defendant prior to the start of trial. *U.S. v. Douglas*, 874 F.2d 1145, 1163 (7th Cir.1989) (government must turn over evidence which is both favorable to the accused and material to the issue of guilt or punishment). Evidence with impeachment value can fall within the *Brady* mandate. *U.S. v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

dell affidavit, attached to the government's response to the motion for a new trial), a criminal conviction could have been used against Mr. Kladouris in a civil trial.

This information also calls into question the medical testimony submitted in the criminal trial. The doctor who offered testimony about Mr. Reidell's injuries may have been consulted in connection with his plan to file suit. None of these avenues of inquiry were pursued before the jury because the defense was not aware of Agent Reidell's intention to file the civil suit.

This court cannot characterize evidence of Mr. Reidell's intention to file a civil suit against Mr. Kladouris as "merely" impeaching. Agent Reidell was the only person who testified that he identified himself to Mr. Kladouris. He was the only person, other than Mr. Kladouris, who testified as to what occurred during the second or two before Mr. Kladouris pushed him into the wall. His testimony was the linchpin of the prosecution's case. The fact that he claims his attorney (erroneously) told him that the outcome of the criminal case would not affect the civil case makes his intention no less material.

This court is not suggesting that Agent Reidell was not truthful in his testimony. It is, however, suggesting that the fact that Agent Reidell was planning to file a civil suit at the time he testified in the criminal case was material, and the defense should have had an opportunity to cross-examine him on the question. Not to require cross-examination on this point would allow Agent Reidell to use (or at least appear to use) the government as an instrument to achieve his own ends. That is unacceptable.

This court finds that the Mr. Kladouris did not discover that Agent Reidell had intended to file a civil suit until that suit was filed, after a verdict had been reached in the criminal trial. This court does not believe that Mr. Kladouris' attorney should have, in the exercise of due diligence, discovered Agent Reidell's intention to filed the suit during the course of the criminal trial. As stated above, the evidence of the civil suit is not "merely impeaching", and

had that evidence been introduced at trial, the outcome of the trial might very well have been different. For all these reasons, this court finds that evidence of Agent Reidell's intention to file a civil suit is "newly discovered" and sufficient to justify a new trial.

*Ineffective Assistance of Counsel*

This court need not rest its decision to grant a new trial on that ground alone. It also finds that Mr. Kladouris received ineffective assistance of counsel, and that he is entitled to a new trial on that, independent, ground.

## I. TIMELINESS

■ Mr. Kladouris also argues that he is entitled to a new trial because his counsel was ineffective. Before this court addresses the merits of that argument, it must consider the government's claim that the motion for a new trial on this basis is untimely. Rule 33 provides that "[a] motion for a new trial based on [any ground other than newly discovered evidence] shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7 day period." Because the instant motion was filed nearly four months after the jury rendered its verdict, the government contends that this court may not entertain it.

The time limit of Rule 33 is jurisdictional. Thus, if it has not been met, this court cannot consider the merits of Mr. Kladouris' claim. The question is complicated here because two separate counsel made post-trial motions raising separate issues. The caselaw in this circuit is clear, however, and does not appear to allow for any deviation. Post-trial motions not based on newly discovered evidence must be filed within seven days of trial, or during the time which the court sets within those same seven days. Thus, 'double' extensions, such as the one granted here, are impermissible. See *U.S. v. Hocking,* 841 F.2d 735, 737 (7th Cir.1988) (district court granted one extension of time to file post-trial motions within the seven-day time period permitted by Rule 33, and then granted a

second extension before the first had expired. The 7th Circuit held that Rule 33 did· not permit the second extension, and therefore the trial court had not had jurisdiction to rule on the motions, even though they were filed prior to the expiration of the second extension).

There is, nonetheless, another argument which would entitle Mr. Kladouris to raise his claim of ineffective assistance in a motion filed outside the seven-day time period. If the facts which have given rise to his ineffective assistance claim were not known to Mr. Kladouris during the trial, then he may raise the claim as newly discovered evidence. As discussed above, Rule 33 provides that motions for a new trial based upon newly discovered evidence may be made within two years of the date of judgment.

The question, of course, is whether the facts which form the basis of Mr. Kladouris' claim are "newly discovered". There is some disagreement among the circuits as to when the facts which support an "ineffective assistance" claim can be deemed "newly discovered". The Court of Appeals in the District of Columbia has held that "evidence of the ineffectiveness of trial counsel ... brought to the attention of the court for the first time in support of [a motion for a new trial] is 'newly discovered' for purposes of Rule 33." *U.S. v. Brown*, 476 F.2d 933, 935 (D.C.Cir.1973). That holding is broad. It focuses upon what is known to the court, rather than what is known to the defendant. The Seventh Circuit has rejected such a broad reading of the term "newly discovered", but it has not closed that door entirely. Since 1977, the law in this Circuit has been that "[where] ... the facts alleged in support of a motion for a new trial were within the defendant's knowledge at the time of trial, such a motion may not be treated as one in the nature of newly discovered evidence for purposes of Rule 33." *U.S. v. Ellison*, 557 F.2d 128, 133 (7th Cir.1977). See also *U.S. v. Brown*, 742 F.2d 363, 368 (7th Cir.1984) (motion for new trial based on "newly discovered" evidence of counsel's ineffectiveness denied because the "motion on its face

refers to actions known to the defendant at the time of trial.")

The question therefore becomes whether Mr. Kladouris was aware of the "ineffective assistance" facts which he cites to support his motion for a new trial. The answer must be no. Mr. Kladouris bases his "ineffective assistance" claim on the following facts:

1. Trial counsel wrote a letter to Mr. Kladouris advising him to plead guilty, and informing him that, to obtain a conviction, the government need only prove that the persons in Mr. Kladouris' restaurant were federal agents, and that Mr. Kladouris "touched their body".

2. Trial counsel failed to submit an instruction advising the jury that a "justification" defense was available to Mr. Kladouris.

3. Trial counsel, after being admonished by the court that the jury should be instructed on "justification", tendered a self-defense instruction to the court.

4. Trial counsel failed to object to the Government's inclusion of facts which occurred after the alleged violation of § 111, despite the fact that this court expressed its concern about the relevance and prejudicial effect of those statements.

5. Trial counsel failed to object to the Government's numerous references to Mr. Kladouris' alleged employment of persons who were not legally in this country.

6. Trial counsel failed to object to the Government's cross-examination regarding whether the defendant resisted arrest, the number of agents who handcuffed Mr. Kladouris, the improper use of a stipulation, and whether Mr. Kladouris knew the employees whom the INS agents attempted to arrest were illegally in this country.

7. Trial counsel did not draft an appropriate limiting instruction to offset the Government's statement that Mr. Kladouris had resisted arrest, an action which would have taken place after the alleged violation for which he was being prosecuted, but rather agreed to an inef-

fective instruction proposed by the Government.

8. Trial counsel did not object to the Government's amendment of the one-count information to include a second charge, after this court did not accept Mr. Kladouris' guilty plea.

Mr. Kladouris is not a lawyer. He cannot be expected to be aware of the availability of a defense of which his attorney failed to advise him. (1, 2). Nor is he expected to be aware that his attorney has misinterpreted the instructions of the court, and the governing law. (3). Mr. Kladouris also could not know which Government statements and questions were objectionable and which were not, (4, 5, 6) and he therefore couldn't have known what type of instruction could have cured any improper statements (7). The question of the legality of the second information was also not a matter within Mr. Kladouris' knowledge. (8).

For these reasons, this court holds that Mr. Kladouris' motion for a new trial based upon his claim of ineffective assistance of counsel is timely filed. It is based upon newly discovered evidence, and is therefore subject to the two-year filing period of Rule 33.

## II. MERITS

Since the motion is timely, this court must now address the merits. Sixth Amendment ineffective assistance claims are quite difficult to prove. The standard has been most recently set in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In that case, the Supreme Court held that counsel is ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. A defendant claiming that trial counsel's assistance was ineffective must prove both that the attorney's performance was deficient and that the defendant was prejudiced by that performance. *Id.* at 687, 104 S.Ct. at 2064.

Under the *Strickland* standard, deficient performance means *deficient* performance. The Court explained that:

[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Id.* at 689, 104 S.Ct. at 2065. Thus, actions by an attorney which could have been reasonable at the time they were taken (though, in retrospect, they had grievous consequences) will not rise to the level of a constitutional violation, and cannot justify an order granting a new trial.

If the court determines that an attorney's representation was deficient, it must further find that the defendant was prejudiced by that deficiency before it may grant a new trial. That means that:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.,* 466 U.S. at 694, 104 S.Ct. at 2068. This court's scrutiny of trial counsel's performance, therefore, must be "highly deferential," *Id.* at 689, 104 S.Ct. at 2065, and this court is obligated "to eliminate the distorting effects of hindsight." *Id.*

Although the *Strickland* standard for ineffective assistance of counsel is difficult to meet, this court is also mindful that "the defendant is entitled to more than just a warm body standing next to him during the criminal process; he or she is entitled to reasonably effective legal assistance." *U.S. v. Otero,* 848 F.2d 835, 837 (7th Cir. 1988) (citing *Strickland*). With these guidelines in mind, this court looks to Mr. Kladouris' specific allegations.

A. Availability of the Defense of Justification

Mr. Kladouris asserts that his trial counsel was, at least initially, unaware of

the single defense available to Mr. Kladouris—that of justification. Although this court eventually specifically pointed out the availability of the defense, and questioned Mr. Kladouris' trial counsel about his failure to assert it, the defense was never fully set forth before the jury.

Mr. Kladouris points to several facts which support his proposition. Trial counsel wrote a letter to Mr. Kladouris suggesting that no defense was available to the charged offense. Supplemental Motion for a New Trial, Ex. A. Trial counsel also failed to submit a jury instruction to the court explaining the availability of the defense, and after this court's admonishment, submitted an instruction on self-defense.

The fact that trial counsel did not submit a "justification" instruction, without which this court stated "[he] might as well plead guilty", Trial Transcript (Tr.), Nov. 29, 1989, p. 142, may have been deficient, but it was not prejudicial, since the court drafted and gave an appropriate "justification" instruction to the jury. However, when considered in conjunction with all of trial counsel's other actions with regard to the defense, it does convince this court that trial counsel simply did not understand the single defense available to his client.

This court cannot conceive of any rational trial theory pursuant to which defense counsel would ignore the only defense available to his client. Trial counsel had already informed Mr. Kladouris that the government was required only to prove that Mr. Kladouris touched an INS agent's body. This court cannot conclude that he was pursuing some reasonable defense other than justification at trial.[5] Therefore this court finds that trial counsel's performance was deficient. See *Keys v.*

*Duckworth*, 761 F.2d 390 (7th Cir.1985) ("[w]hile the choice of a particular line of defense is often characterized as trial strategy, the decision to forego what may be the only available defense can fall below sixth amendment standards." Citations omitted.) Whether trial counsel's omission prejudiced the defendant is a more difficult question.

Although trial counsel may not have been specifically attempting to elicit the testimony, Mr. Kladouris did offer a statement which could have supported a "justification" theory of defense.[6] Since testimony which could have supported the theory, as well as an instruction allowing the jury to consider the theory in reaching its verdict were presented to the jury, this court cannot find that, by itself, the failure to submit a "justification" instruction prejudiced Mr. Kladouris, at least in the *Strickland* sense. This court does, however, find that Mr. Kladouris was prejudiced by the fact that his trial counsel never fully understood the single defense available to Mr. Kladouris. This, as this court discusses below, affected every stage of trial counsel's representation of Mr. Kladouris, and exacerbated a multitude of other errors.

**B. Evidence Concerning Post–Violation Behavior**

Mr. Kladouris maintains that his trial counsel erred by failing to object to the government's proffered evidence about Mr. Kladouris' arrest. During its opening statement, the government informed the jury that it expected to prove not only that Mr. Kladouris interfered with the arrest of his two employees, but he resisted his own arrest. Mr. Kladouris' trial counsel did not

---

**5.** Self-defense, by itself, was not a reasonable theory of defense. The defense available to Mr. Kladouris was not simply self-defense. Rather, the only defense available to Mr. Kladouris was that he was 'justified' in acting as he did. That is, if he reasonably didn't know that the people moving through his restaurant were federal agents, he could have offered evidence that he would have been justified to act as he did, for instance in self-defense. See cases cited in n. 2.

**6.** Mr. Kladouris testified "I see my two working Mexican people, they was walking towards the

back and then I see a man behind them.... I asked him who he was.... And then he says, 'Get the hell out of my way.' ... I step in front of him and I grab him.... Then another man comes in, and they swing me around, they push me over the counter.... One man was choking me.... And the other guy was putting my hands down and put my handcuffs on.... After they put the handcuffs on, one gentleman comes to my ear and says, 'Immigration, you asshole'...." Trial Transcript, Nov. 29, 1989, pp. 146–147.

object. This court, however, expressed its concern about the relevance of such evidence, Tr. Nov. 28, 1989, p. 22.

Later, this court held that evidence on the issue of the arrest would not be admissible, *Id.* at 45–64, and instructed the parties to collaborate on an instruction notifying the jury that it should not consider the government's opening statement, including its comments about the arrest, as evidence.[7] *Id.* Nonetheless, the government did cross examine Mr. Kladouris about his arrest, with no objection from Mr. Kladouris' trial counsel. Tr. Nov. 29, 1989, pp. 167–172.

This court holds, however, that the disputed testimony could legitimately have gone to the question of defendant's intent. While the inadmissible statements made during the government's opening were prejudicial to Mr. Kladouris, and were not remedied by a timely limiting instruction, this court finds that they were not sufficiently prejudicial, by themselves, to rise (or descend) to the level sanctioned by *Strickland.*

■ This court is similarly unable to find constitutional prejudice in the government's references, throughout the transcript, to Mr. Kladouris' employment of persons who had not been legally admitted to this country. Those references could have gone, if indirectly, to the question of intent. If Mr. Kladouris knew he was employing people who were not authorized to be in this country, then the jury could find that it was more likely that he knew the people chasing them through the restaurant that day were Immigration officers. Thus, should the jury follow that inferential chain, Mr. Kladouris' proffer of the justification defense would not have saved him.

Although this court finds that trial counsel's failure to object to these references demonstrated a woeful lack of skill, and resulted in prejudice to Mr. Kladouris, it cannot find that they were prejudicial enough, *by themselves,* to meet the *Strickland* standard.

## C. Amendment of the Information

■ The government amended the information charging Mr. Kladouris sometime after this court refused to accept Mr. Kladouris' plea, but before the trial began. When this court expressed its surprise at the amendment, Tr. Nov. 29, 1989, pp. 45–50, the government's attorney informed the court that:

> I had limited the factual basis of the plea to the terms of the agreement which [trial counsel] and I had worked out.
>
> \* \* \* \* \* \*
>
> After your Honor decided not to take the plea, I called [trial counsel] and told him that our intention was to charge the case in the manner we would have charged it had we not had an agreement on the information and [trial counsel] was kind enough to agree to that.

*Id.,* p. 46.

Rule 7(e) of the Federal Rules of Criminal Procedure provides that "[t]he court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." The amendment to the information added the names of two INS agents who participated in the arrest of Mr. Kladouris. The arrest occurred after the conduct which this court had initially been informed comprised the basis of the government's case. The government apparently believed that the addition of the arresting officers' names would authorize it to introduce evidence about Mr. Kladouris' arrest. However, the government failed to include any facts about the arrest in the amended information.

Since the amended information introduced the names of two new officers, but added no new facts, this court finds that it

---

7. Although this court was not satisfied with the instruction initially tendered by the government, it did eventually instruct the jury that the Government's opening statement was not to be considered as evidence, and that evidence of acts other than those charged was to be considered only on the question of intent. Tr. Nov. 29, 1989, beginning with "Closing Argument on Behalf of the Government", p. 34

did not give Mr. Kladouris sufficient notice about the evidence which the government intended to introduce at his trial. Furthermore, this court finds that the charge of resisting arrest, which the amendment would have effectively added to the information, is an "additional or different" offense than that of interfering with a federal agent, the only offense charged in the initial information.[8] Nonetheless, trial counsel never objected, so far as the record shows, to the amendment of the information, and trial counsel certainly never brought the matter before this court.

Trial counsel's failure resulted in prejudice to Mr. Kladouris. The government alluded to evidence about Mr. Kladouris' arrest in its opening statement, Tr. Nov. 28, 1989, pp. 20–21. Trial counsel failed to object to those statements. Although this court subsequently ruled that evidence about attempts to subdue or arrest Mr. Kladouris would not be admissable, *Id.*, pp. 61–62, trial counsel disregarded this court's invitation to submit an instruction to the jury admonishing it to disregard unsupported statements by the government made during its opening statement.[9] Trial counsel also failed to object when, later in the trial, the government pursued questions about Mr. Kladouris' arrest. Tr. Nov. 28, 1989, pp. 74–75, 76, Nov. 29, 1989, 176–178.

The information was not amended in accordance with Rule 7(e) [10]. As a result, the defendant was not adequately informed of the charges against him. Furthermore, the government made statements to the jury which were not ultimately supported by the evidence. Those statements were not cured by a timely instruction. This court therefore finds that trial counsel's behavior with respect to the amendment was deficient, and resulted in prejudice to Mr. Kladouris.

## CONCLUSION

■ Although this court has found that trial counsel's failure to object to the amendment of the information was prejudicial to Mr. Kladouris, it cannot say that error, alone, was sufficiently prejudicial to require a new trial according to the *Strickland* standard. Nonetheless, none of the errors made during the trial stand by themselves. Sometimes, no single specific error of counsel is sufficiently bad to justify a new trial. But, when considered cumulatively, enough "not-too-bad" errors can amount to one very bad trial. See *Kubat v. Thieret*, 867 F.2d 351, 370 (7th Cir.1989) (it is appropriate to consider combined effect of counsel's errors in determining whether counsel's representation was constitutionally ineffective). That is what happened here.

Mr. Kladouris' trial counsel made error after error. Some have been pointed out in this opinion, many others leap out from the pages of the trial transcript.[11] In light of all the errors and omissions made during the trial, and mindful of their cumulative

8. This court is unconvinced by the government's argument that resisting arrest constitutes a violation of § 111, and finds the single case cited in support of the government's proposition distinguishable on the facts from Mr. Kladouris' case. See Tr. Nov. 28, 1989 pp. 45–50.

9. Trial counsel instead agreed to a government instruction which this court found to be inadequate. Trial counsel never submitted a revised instruction. See Discussion in Part B, above.

10. The amendment was not made pursuant to leave of this court, it added a new offense, to the prejudice of the defendant.

11. Some of the errors not raised by defendant's new counsel, but which this court noted during the trial and in its review of the trial transcripts are: 1) The government conducted its direct examination of Agent Reidell almost entirely through leading questions, only two of which were objected to by trial counsel, Tr. Nov. 28, 1989, pp. 23–43, 73–77; 2) Trial counsel lost certain papers which Mr. Kladouris referred to in support of his testimony that he was required to re-hire the people arrested by the INS, Tr. Nov. 29, 1989 p. 151; the government used the fact that the papers were missing to impeach Mr. Kladouris' testimony, *Id.*, pp. 178–79; 3) Trial counsel objected to the introduction of evidence to which he had already stipulated, stating "I changed my mind." *Id.*, p. 155; 4) Trial counsel failed to object to the improper use of a stipulation, prompting this court to admonish him to "[p]ay attention...." *Id.*, p. 166; 5) Trial counsel failed to object to the government's cross-examination about Mr. Kladouris' arrest, even though this court had already ruled that such evidence was not admissable, *Id.*, p. 177.

effect, this court is convinced that this trial did not serve the ends of justice. Rule 33 authorizes this court to grant a new trial "in the interest of justice." That standard is met "[w]hen ... the complete record, testimonial and physical, does not permit a *confident* conclusion that the defendant is guilty beyond a reasonable doubt...." *U.S. v. Morales*, 902 F.2d 604, 608 (7th Cir.1990). In such cases, "the district judge is obliged to grant a motion for a new trial." *Id.* See also, *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068 (new trial is appropriate if counsel's performance is so poor that it undermines confidence in the outcome of the trial). This court therefore grants Mr. Kladouris a new trial.