**UNITED STATES of America**

v.

**Virgil Dean ST. PIERRE, St. Pierre Insurance Agency, Inc., and American Marketing Insurance Corporation, Defendants.**

**No. 96–75–CR–FTM–17.**

United States District Court,
M.D. Florida,
Fort Myers Division.

Aug. 12, 1999.

Charles Alex Murray, Law Office of Charles A. Murray, Naples, FL, John Edward Fernandez, Law Office of John E. Fernandez, Tampa, FL, for Virgil Dean St. Pierre, defendants.

Robert P. Barclift, U.S. Attys., Office, Ft. Myers, FL, for U.S.

Edward Lee Wotitzky, Wotitzky, Wotitzky, Mizell & Toss, P.A., Punta Gorda, FL, for ABS & Associates, Inc.

## ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL

KOVACHEVICH, Chief Judge.

THIS CAUSE comes before the Court on Defendant, Virgil Dean St. Pierre's, Motion for New Trial, (Dkt.308), filed on May 21, 1999, and the United States of America's response thereto, (Dkt.319), filed July 1, 1999.

### FACTUAL BACKGROUND

The following factual allegations are taken from the Superceding Indictment, (Dkt.26), filed on September 18, 1996. Defendant, Virgil Dean St. Pierre, previously conducted business out of an office located in Port Charlotte, Florida. Defendant was licensed by the State of Florida to sell life and health insurance and part of the business conducted out of Defendant's office in the city of Port Charlotte consisted of insurance sales. St. Pierre Insurance Agency, Inc. (hereinafter "St. Pierre Insurance") was a Florida corporation wholly owned by Defendant. A portion of the business conducted out of Defendant's Port Charlotte office was conducted through St. Pierre Insurance. American Marketing Insurance Corporation (hereinafter "American Marketing") was also a Florida corporation wholly owned by Defendant. Defendant also conducted business out of the Port Charlotte office through American Marketing.

On or about the year 1989, until the time Defendant was indicted, Defendant, St. Pierre Insurance, and American Marketing were alleged to have "knowingly and wilfully devise[d] and intend[ed] to devise a scheme ... to defraud investors/lenders, and to obtain money and property from investors/lenders by means of false representations, pretenses[,] and promises." As a part of Defendant's, St. Pierre Insurance's, and American Marketing's fraudulent actions, approximately 2.8 million dollars were obtained from investors/lenders.

Defendants, collectively, targeted as investors/lenders individuals between the ages of sixty (60) and eighty (80). Defendants lured prospective investors/lenders into the fraudulent scheme by contacting former insurance customers and through solicitation of new customers. Defendants solicited new customers by "blind solicitation" and by purchasing lists of potential customers who were between the ages of sixty (60) and eighty (80).

Defendants persuaded investors/lenders to join in the fraudulent investment by making various false representations. Defendant falsely and fraudulently told investors/lenders that: 1) Defendant was a "successful insurance agent who operated a lucrative insurance agency, whereas in truth, the defendants knew that Defendant derived minimal revenue from the insur-

ance business and knew that St. Pierre Insurance and American Marketing were insolvent;" 2) the defendants derived income from approximately one-thousand five hundred (1500) insurance agents under contract with the defendants, whereas in truth, Defendant knew they did not have such agents working for them; 3) the defendants were expanding the number of insurance agents under contract; 4) Defendant, through St. Pierre Insurance and American Marketing, was developing property, known as Cedar Oaks, which contained a clubhouse, golf course, and completed residences, whereas in truth, the defendants knew that the clubhouse, golf course, and completed residences were not located on Cedar Oaks property, but on a neighboring development in which the defendants had no interest, and whereas in truth, the defendants knew the Cedar Oaks land had only been cleared and a necessary permit to develop Cedar Oaks had been denied by the Southwest Florida Water Managements District; 5) the defendants had sold home lots within Cedar Oaks to individuals, whereas in truth, the defendants knew that no lots had been sold and to do so would violate Florida law; 6) Defendant, through St. Pierre Insurance and American Marketing, loaned money to major insurance companies which paid twenty (20) percent interest, and by using the funds received from investors/lenders, the defendants could loan the funds to the insurance companies and make a profit, while paying investors/lenders interest between eight (8) and eighteen (18) percent interest, whereas in truth, the defendants knew that the defendants were insolvent and made no such loans; and 7) funds given by investors/lenders were "guaranteed and insured" by insurance companies and/or the FDIC, whereas in truth, the defendants knew the funds were not guaranteed and/or insured.

Defendant further defrauded investors/lenders by: 1) presenting to investors/lenders brochures, photographs, diagrams, and videos which purported to depict Cedar Oaks, whereas in truth, the defendants knew large portions of the depictions contained in the brochures, photographs, diagrams, and videos were not of Cedar Oaks, but of property in which St. Pierre Insurance and American Marketing had no interest; 2) describing the money received by investors/lenders as investments and by giving lenders "Notes" in return for funds, which appeared similar to stock certificates, whereas in truth, the defendants knew the "Notes" were at most promissory notes, evidencing unsecured indebtedness on the part of either St. Pierre Insurance and American Marketing; 3) by operating St. Pierre Insurance and American Marketing as a "Ponzi," or pyramid scheme, wherein investors/lenders were repaid their principal and earned interest based upon funds obtained from subsequent investors/lenders; 4) by discouraging investors/lenders from reporting the scheme to defraud to law enforcement officers by eroding confidence in law enforcement through claims that members of law enforcement were purposely harming the defendants' businesses; and 5) by misrepresenting, concealing, and hiding the purpose of acts done in furtherance of the scheme to defraud.

The Superseding Indictment also alleges that Defendants "knowingly and willfully," in furtherance of the scheme to defraud, engaged in mail fraud, in violation of 28 U.S.C. § 1341, and money laundering, in violation of 18 U.S.C. § 1956(a)(1).

### *PROCEDURAL BACKGROUND*

Defendant appeared before the Court at an initial appearance on August 23, 1996. (Dkt.6). At that initial appearance, the Court appointed a federal public defender to represent Defendant. (Dkt.7). After the initial appointment of counsel to Defendant, St. Pierre Insurance, and American Marketing were added as defendants in this case. Once St. Pierre Insurance and American Marketing were added to the case, the Court appointed a public defend-

er to represent Defendant, St. Pierre Insurance, and American Marketing. (Dkt.18). Although Defendant had been appointed counsel by this Court, Defendant also contacted a private attorney, attorney John E. Ryan, to represent Defendant. As the Court and attorney John E. Ryan were unsure of Defendant's financial abilities, the Court permitted attorney John E. Ryan to make a limited appearance on behalf of Defendant.

On September 13, 1996, Defendant was arraigned before the Honorable George T. Swartz. On September 19, 1996, Defendant filed an emergency motion to withdraw attorney John E. Ryan as defense counsel. (Dkt.28). The Court held a hearing on Defendant's emergency motion to withdraw attorney John E. Ryan on September 20, 1996. (Dkt.32). At this hearing, the Court denied Defendant's emergency motion to withdraw attorney John E. Ryan; however, the Court permitted the previously appointed public defender, Charles Harris, to withdraw as Defendant's counsel. On October 11, 1996, the Court ordered that attorney John E. Ryan be terminated as Defendant's counsel and ordered that a federal public defender be appointed for Defendant. (Dkt.43). The Court further ordered that Defendant make monthly payments in the total sum of two-thousand dollars ($2,000.00) to the Clerk of the Court for reimbursement to the Defender Services. (Dkt.43).

In response to the Court's order to appoint counsel, attorney Harold M. Stevens was appointed to represent Defendant. (Dkt.46). On November 15, 1996, Defendant filed a motion to withdraw attorney Harold M. Stevens. (Dkt.54). The Court granted Defendant's motion to withdraw attorney Harold M. Stevens on November 18, 1996, and directed the Clerk of the Court to, once again, appoint a federal public defender. (Dkt.55).

In response to the Court's order dated November 18, 1996, attorney Charles Harris was appointed on November 19, 1996. (Dkt.61). On November 21, 1996, Defendant filed a motion with the Court to withdraw Charles Harris and also filed two (2) motions for pretrial release from custody, which were denied by the Court on November 22, 1996. (Dkts.62–65). On November 25, 1996, Defendant, again, filed a motion for the withdrawal of attorney Charles Harris. (Dkt.67).

On December 6, 1996, a hearing was held to address Defendant's two (2) motions for the withdrawal of attorney Charles Harris. (Dkt.76). The Court also addressed another motion, filed by Defendant on November 25, 1996, for pretrial release. (Dkt.76). The Court denied, once again, Defendant's motion for pretrial release and permitted the withdrawal of attorney Charles Harris. (Dkt.76). On December 11, 1996, the court appointed attorney Howard Freidin to represent Defendant. (Dkt.78).

On February 19, 1997, the Court held a hearing to consider Defendant's motion to set bond, (Dkt.82), filed on December 24, 1996. (Dkt.102). The court originally set Defendant's secured bond at $500,000.00, with electronic monitoring. (Dkt.102). However, after the Court set Defendant's bond, Defendant attempted to escape. (Dkt.103). As a result of Defendant's attempted escape, the Court reconsidered the issue of bond and heard sworn testimony from a U.S. Deputy Marshal that witnessed Defendant's attempted escape. (Dkt.103). As a result of Defendant's attempted escape and the testimony presented, the Court denied Defendant's motion for bond with prejudice. (Dkt.103). This, however, did not stop Defendant's efforts. Defendant filed another motion for bond and medical treatment on March 13, 1997. (Dkt.106).

On May 13, 1997, Defendant filed a motion for the withdrawal of court appointed attorney Howard Freidin. (Dkt.113). On June 3, 1997, the Court held a hearing on Defendant's motion and subsequently granted Defendant's motion for the withdrawal of attorney Howard Freidin.

(Dkt.118). On June 17, 1997, the Court appointed attorney Ralph W. Chandler to represent Defendant. (Dkt.120). On June 19, 1997, Defendant filed a motion for the withdrawal of attorney Ralph W. Chandler, which was denied on June 27, 1997. (Dkts.121, 123).

On November 3, 1997, a jury trial commenced against Defendant, St. Pierre Insurance, and American Marketing. (Dkt.166). On November 12, 1997, Defendant, St. Pierre Insurance, and American Marketing were convicted of several counts of mail fraud, in violation of 18 U.S.C. § 1341, and money laundering, in violation of 18 U.S.C. § 1956(a)(1).

On May 21, 1999, Defendant filed a Motion for New Trial. Defendant states that a new trial is warranted and asserts that: 1) the Government engaged in a systematic effort of prosecutorial misconduct to produce a criminal charge and conviction against Defendant; 2) Defendant was not provided with effective assistance of counsel; 3) there is not sufficient extrinsic evidence to sustain the jury's verdict of guilt against Defendant; and 4) Defendant was impermissibly tried in the presence of the jury while handcuffed.

On July 1, 1999, the United States responded to Defendant's Motion for New Trial. The United States counters Defendant's arguments by stating that: 1) Defendant's Motion for New Trial is untimely; 2) sufficient evidence exists to support the jury's determination of guilt as to Defendant; 3) Defendant's counsel was effective at and before trial; 4) Defendant has not established any prejudice resulting from the alleged ineffectiveness of counsel; 5) prosecutors did not engage in misconduct regarding any suggestion made to the Court for appointment of Defendant's counsel; 6) Defendant has failed to assert any prejudice that may have resulted from the alleged prosecutorial misconduct; 7) allegations that Defendant was presented before the jury while in handcuffs are not supported factually or legally, and were not prejudicial under the circumstances of this case; and 8) Defendant was not prejudiced by any alleged selective or vindictive prosecution.

### I. Timeliness

Federal Rule of Criminal Procedure 33 states, in pertinent part, that:

> On a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require.... A motion for new trial *based on newly discovered evidence* may be made *only within three [3] years* after the verdict or finding of guilty.... A motion for new trial *based on any other grounds* may be made only *within [seven] 7 days* after the verdict or finding of guilty or within such further time as the court may fix during the [seven] 7 day period.

(emphasis added).

 The time limits imposed by Federal Rule of Criminal Procedure 33 are jurisdictional. *See United States v. Hill,* 177 F.3d 1251, 1252 (11th Cir.1999); *United States v. Moreno,* 181 F.3d 206, 1999 WL 415174, at * 4 (2nd Cir.1999); *United States v. Bramlett,* 116 F.3d 1403, 1405 (11th Cir.1997); *United States v. DiBernardo,* 880 F.2d 1216, 1223 (11th Cir.1989); *United States v. Brown,* 587 F.2d 187, 189 (5th Cir.1979). After the expiration of the seven (7) day time period for making motions for new trial on grounds other than newly discovered evidence, the district court no longer has jurisdiction to hear a motion for new trial. *See id.*

 The Court also lacks the ability to extend the time period for making a motion for new trial after the expiration of the seven (7) day time period provided by Federal Rule of Criminal Procedure 33. *See id.* In order to extend the seven (7) day time period for making a motion for new trial, the district court must order an extension within the original seven (7) days after the verdict of guilty. *See id.* In addition, subsequent motions for new trial do not "relate back" to the date of a timely filed motion for new trial. *See Bramlett,* 116 F.3d at 1405–1406. Each motion for

new trial must stand on its own and must completely satisfy the jurisdictional requirements set out in Federal Rule of Criminal Procedure 33. *See id.*

■■■ While Federal Rule of Criminal Procedure 33 does provide three (3) years for the filing of a motion for new trial that results from newly discovered evidence, the evidence involved must meet strict requirements to be considered newly discovered. *See United States v. Hall,* 854 F.2d 1269, 1271 (11th Cir.1988). The Eleventh Circuit has consistently followed a five-part test when determining whether a motion for new trial should be granted because of newly discovered evidence. *See id.* When determining a motion for new trial based on newly discovered evidence, courts are instructed that:

> (1) the evidence must be discovered following the trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to issues before the court; and (5) the evidence must be of such a nature that a new trial would probably produce a new result.

*Hall,* 854 F.2d at 1271 (citing *United States v. Hobson,* 825 F.2d 364, 366 (11th Cir.1987); *United States v. Bolinger,* 796 F.2d 1394, 1401 (11th Cir.1986); *Bentley v. United States,* 701 F.2d 897, 898 (11th Cir.1983)). The Eleventh Circuit has also instructed courts to consider a motion for new trial, based on newly discovered evidence, with "great caution." *See Hall,* 854 F.2d at 1271 (citing *Bentley,* 701 F.2d at 898).

In the case at hand, Defendant was found guilty by a jury on November 12, 1997. Defendant's Motion for New Trial was not filed with this Court until May 21, 1999, which is well outside the seven (7) day time period permitted for all motions for new trial, except those based on newly discovered evidence. *See* Fed.R.Crim.P. 33. Therefore, the Court must consider whether Defendant's Motion for New Trial is based on newly discovered evidence.

After reviewing Defendant's Motion for New Trial, the United States' response, the entire record, and relevant law, this Court finds that it does not have jurisdiction to consider Defendant's Motion for New Trial. Defendant's Motion for New trial does not assert that any of the allegations contained within the Motion for New Trial are newly discovered and after thorough examination of the transcripts and record of this case, the Court finds that the allegations are not newly discovered. In addition, the Court notes that even if Defendant's Motion for New Trial were based on newly discovered evidence, it is highly improbable that Defendant's Motion for New Trial would succeed on the merits.

■ The Court also notes that Defendant has not been sentenced as of this date and, therefore, the Court also lacks jurisdiction to consider this matter as a motion brought pursuant to 28 U.S.C. § 2255. *See DiBernardo,* 880 F.2d at 1225–26 (stating that a court may consider an untimely motion for new trial as a section 2255 motion to vacate sentence where the procedural requirements for a section 2255 motion have been satisfied).

### A. Prosecutorial and Investigative Misconduct

■ Defendant requests that the Court grant a new trial because prosecutors and investigators have engaged in "a systematic effort to deny [Defendant] due process of law." (Dkt.308). Defendant also asserts that "[t]he actions of investigators and prosecutors ... have resulted in charges being manufactured and witnesses being intimidated, [which led to] otherwise happy and content investors being suddenly made nervous." (Dkt.308).

To support Defendant's allegations regarding prosecutorial and investigative misconduct, Defendant relies on various factual allegations. In particular, Defendant states that FBI agent Nolan hindered Defendant's ability to realize profits by telling investors, "all elderly people who

are easily swayed by con-men," that Defendant had scammed them out of their money, that the Cedar Oaks development did not exist, that the brochure Defendant had shown investors contained pictures of a golf course and clubhouse that were not part of Defendant's property, that Defendant held no interest in the golf course or clubhouse pictured on the brochures shown to investors, and that the land owned by Defendant was undevelopable swampland. (Dkt.308). Defendant asserts that "agent Nolan was able to lead these vulnerable elderly investors into a panic." (Dkt.308). As a result of agent Nolan's actions, Defendant asserts that a "run on the bank" was created, which resulted in Defendant's "momentar[y] over-extended financial situation." (Dkt.308).

Defendant further asserts that FBI agent Nolan approached three (3) possible witnesses for the prosecution and told these witnesses that Defendant was hiding money in Swiss bank accounts and was spending money on a lavish lifestyle, which included the solicitation of prostitutes. Defendant asserts that FBI agent Nolan's actions were particularly malicious because FBI agent Nolan knew that two of the three witnesses spoken to were Defendant's ex-wife and current girlfriend. Defendant concludes his allegations of misconduct concerning FBI agent Nolan by stating that "[c]learly [FBI agent] Nolan was and is a[n] agent who must justify his role and status with the FBI by finding criminals, whether they exist or not." (Dkt.308).

In addition to Defendant's allegations regarding investigatory misconduct, Defendant also makes numerous allegations regarding the alleged misconduct of the prosecutors involved in this case. Defendant first asserts that a new trial is warranted because the prosecution "[failed] to admit that the Cedar Oaks development had a current market value of 3.2 million [dollars]." (Dkt.308). Defendant also asserts that the prosecution failed to admit specific facts into evidence at trial and that this failure warrants a new trial. Some of the things Defendant claims should have been admitted into evidence by the prosecution include: 1) the alleged fact that "home building companies were soliciting for the rights to build on [the Cedar Oaks development]"; 2) the alleged fact that "lending institutions were offering loans to complete development [of the Cedar Oaks development]"; 3) the alleged fact that offers for tracts of land within the [Cedar Oaks development] had started to come in; and 4) the alleged fact that Defendant had applied for a permit from Southwest Florida Water Management District. (Dkt.308).

Defendant's Motion for New Trial also asserts that after Defendant dismissed his first two (2) attorneys, the United States Attorney's Office recommended to the Court the appointment of attorney Friedman to represent Defendant. Defendant states that the prosecution acted in an improper manner because the prosecution failed to disclose that attorney Friedman was under investigation by the United States Attorney's Office for illegal conduct. Defendant states that attorney Friedman was later indicted and convicted by the same United States Attorney's Office.

With respect to Defendant's allegations regarding attorney Friedman, after reviewing the entire record of this case, the Court is unable to identify any previous reference to an individual named Friedman. While in the end this is of no significance to the Court's findings, the Court will assume that Defendant intends to refer to attorney Howard Freidin.

Defendant further asserts that prosecutors unreasonably pursued Defendant because of Defendant's questions and actions concerning the results of an investigation and trial involving an individual named Jerry Hamilton. Jerry Hamilton is a former business acquaintance of Defendant, who Defendant refers to as being the "protected favorite son of the United States Attorney's Office." (Dkt.308). Defendant states that Jerry Hamilton was prosecuted

for being involved in various illegal acts performed in connection with insurance ventures. Defendant claims that the sentence received by Jerry Hamilton was not adequate to remedy the losses felt by Defendant and the State of Florida.

As a result of Defendant's beliefs regarding the punishment of Jerry Hamilton, Defendant filed complaints against the Florida State Attorney's Office, the Florida Insurance Commissioner, the Florida Department of Law Enforcement, the Federal Bureau of Investigation, the Charlotte County Sheriff's Office, and the United States Attorney's Office. Defendant attributes the prosecution against him to the Complaints Defendant made against the various entities previously named and the need of the United States Attorney's Office to "protect the new identity of [Jerry] Hamilton and to protect the information that [Jerry] Hamilton must have had to be granted his new life, [which ultimately led to the requirement that] Defendant be shut up." (Dkt.308).

In determining whether the allegations made by Defendant against the various entities and individuals previously discussed are newly discovered evidence, the Court assumes that Defendant has credible evidence to support and establish each of these claims. However, even after making this very broad assumption, the Court is unable to find that Defendant has satisfied the five-part test to establish that evidence is newly discovered. *See Hall,* 854 F.2d at 1271. The Court has reviewed the entire transcript and has found that Defendant has specifically alleged violations against prosecutors and investigators throughout the numerous court proceedings involved in this case. Defendant has previously brought the aforementioned issues before the Court and counsel, where such issues were addressed. Whether or not Defendant is currently satisfied with the manner in which these issues were addressed is not at issue. The fact that Defendant had knowledge of the alleged issues at trial is sufficient to show that the issues are not newly discovered evidence under Federal Rule of Criminal Procedure 33.

In deciding that Defendant cannot satisfy the five-part test for newly discovered evidence, the court specifically refers to the record of this case, which includes numerous transcripts. In addition to the general referral to the record, the Court refers counsel to specific examples of Defendant's knowledge contained within the transcripts of this case. For instance, on June 3, 1997, Defendant stated to the Court that:

> [S]ince 1990 to 1996, the Charlotte County Sheriff's Department tried to run me out of business. Then the State Insurance Commissioner's Office ran around and told people I wasn't a licensed agent. The FBI agent told people I had a Swiss bank account with two million dollars in it.

(Dkt. 126, page 8). On September 20, 1996, Defendant stated to the Court that:

> I have been trying to sell some business holdings, and I have some federal officials harassing people that I have been trying to sell to, and they were threatened. It's impossible for me to ... talk to people that I was selling ... to ... [when they] are being threatened ...

(Dkt. 44, page 30). On November 12, 1997, Defendant stated to the Court that:

> My last attorney, Mr. Howard [Friedin], was under federal investigation by the U.S. Attorney's Office when he was given to me by the attorney's office, and he was recommended to me by [the prosecutor].... 
>
> I have [one-hundred] 100 and some [examples of] case law that I asked my attorney's to help me with [involving] civil rights violations, Constitutional [r]ights, conspiracy by the government agencies, cruel and unusual punishment ...
>
> I've been in business since 1973. Jerry Hamilton sold my insurance agency, American Marketing Insurance Corpo-

ration ... Jerry Hamilton was allowed to sell my business, and the Charlotte County Sheriff's Office stopped me and harassed me in my office, and it ruined my insurance business.

I've tried since 1990 to get town, state, and federal officials to help me. In turn they tried to run me out of business. I had police cruisers parked in my driveway. My secretary ... quit because I got black roses, a death threat at my office....

Mr. Nolan made threats against me. He told me to leave the Jerry Hamilton case alone. He threatened me at my CPA's office.... He told people that I let him in the office. In reality they broke in the office with a search warrant, and then in April of 1996 he was at my CPA's office, and he threatened me outside the office there, and he told me that he would do anything possible to destroy me including the [fact that the] Government had authorized him to spend $850,000 to get me....

The county, state, and federal officials are saying money laundering is against the law.... Jerry Hamilton [sold] my insurance agency and for six years the county, state, and federal officials, including the FBI office, knowingly and willingly covered it up, which is a felony, and the[y] conspired together to destroy me....

The Insurance Commissioners have been telling people for years that I'm not a licensed insurance agent ... it looks to me like being honest doesn't work.

(Dkt.190).

In light of the previously cited information, as well as other information contained in the numerous transcripts of this case, the Court finds that Defendant cannot meet the five-part test for newly discovered evidence as set out in *Hall*, 854 F.2d at 1271. In particular, this Court finds that Defendant cannot satisfy the first requirement of the five-part test, which requires that the evidence be discovered following the trial. *See id.* Therefore, Defendant's Motion for New Trial, as to prosecutorial and investigatory misconduct is untimely, as it was filed well outside the seven (7) day time period permitted under Federal Rule of Criminal Procedure 33.

### B. Ineffective Assistance of Counsel

Defendant also asserts that a new trial is warranted because Defendant's appointed counsel was ineffective. First Defendant asserts that Court appointed counsel "failed to rebut outrageous claims [made] by the Government and failed to present any evidence that would establish that no crime had been committed." (Dkt.308). Defendant asserts that due to the "complex investment and accounting issues" involved in this case, Defendant's counsel should have submitted the testimony of an accountant to counter testimony offered by the prosecution. Defendant asserts that appointed counsel should have offered the testimony of a property appraiser or a land developer and an expert in business.

As stated previously, Defendant's Motion for New Trial was filed well outside the seven (7) day time limit afforded by Federal Rule of Criminal Procedure 33. Therefore, in order for this Court to have jurisdiction over Defendant's Motion for New Trial, Defendant must establish that the Motion for New trial is based on newly discovered evidence.

Many Circuits have addressed the issue of whether a defendant's allegations of insufficient counsel are considered newly discovered evidence under Federal Rule of Criminal Procedure 33. The majority of those circuits have found that allegations of insufficient counsel are not newly discovered evidence for purposes of determining the timeliness of a motion for new trial brought pursuant to rule 33. *See United States v. Smith,* 62 F.3d 641, 648–49 (4th Cir.1995); *United States v. Stockstill,* 26 F.3d 492, 497 n. 9 (4th Cir.1994); *United States v. Laird,* 948 F.2d 444, 446 (8th Cir.1991); *United States v. Seago,* 930 F.2d 482, 489–90 (6th Cir.1991); *United*

States v. Lema, 909 F.2d 561, 565 (1st Cir.1990); United States v. Miller, 869 F.2d 1418, 1421 (10th Cir.1989); United States v. Dukes, 727 F.2d 34, 39–40 (2d Cir.1984); United States v. Lara–Hernandez, 588 F.2d 272, 275 (9th Cir.1978); United States v. Ellison, 557 F.2d 128, 133 (7th Cir.1977). But see United States v. Brown, 476 F.2d 933, 935 (D.C.Cir.1973) (stating that even if a defendant has knowledge of the facts giving rise to a motion for new trial, the motion for new trial due to ineffective assistance of counsel will be considered as based on newly discovered evidence if the evidence in support of the motion for new trial was not previously brought to the district court's attention); see also United States v. Kladouris, 739 F.Supp. 1221, 1225 (N.D.Ill. 1990). Further, it is not sufficient in itself, that the legal implications of evidence are newly discovered, the evidence itself must be newly discovered. See Ugalde, 861 F.2d at 806.

■ After careful consideration of the law, transcripts, and arguments of counsel, the Court finds that Defendant's allegations concerning the ineffectiveness of counsel are not newly discovered and, therefore, are untimely. Even without placing reliance on the decisions of other circuits, this Court finds that Defendant has not satisfied the five-part test followed by the Eleventh Circuit in determining whether evidence is newly discovered. See Hall, 854 F.2d at 1271. Defendant's allegation that appointed counsel was ineffective for failing to call an accountant, a property appraiser, and an expert, as well as all other allegations regarding the ineffectiveness of counsel, were within Defendant's knowledge at the time of the trial and are, therefore, not newly discovered. It is not enough that Defendant recently discovered the impact of decisions properly made by appointed counsel. See id. Defendant must have discovered new evidence. See id.

As Defendant has not satisfied the five-part test for determining whether evidence

is newly discovered, and in light of the majority of decisions regarding this issue, the Court finds that jurisdiction over Defendant's Motion for New Trial, as to Defendant's claims of ineffective assistance of counsel, does not exist.

### C. Sufficiency of the Evidence

In addition to the previous assertions made by Defendant, Defendant states that there is no factual basis to warrant upholding the jury's finding of guilt. Defendant states that the conviction must be vacated because "defendant never had any intent to defraud any investor [and] was not insolvent." (Dkt.308). Defendant alleges that had the prosecution or defense counsel admitted evidence regarding the alleged worth of Defendant's property the jury would have had all the facts necessary to determine Defendant's guilt or innocence. Defendant states that because the jury was not given evidence of the alleged worth of Defendant's property, the jury was given insufficient evidence to consider the innocence or guilt of Defendant.

■ Once again, Defendant's Motion for New Trial, on the basis of alleged insufficiency of evidence, is untimely under Federal Rule of Criminal Procedure 33. Defendant has failed to assert that allegations regarding the sufficiency of evidence are newly discovered. Even though Defendant made a timely motion for judgment of acquittal on November 14, 1997, that motion was subsequently denied. (Dkt.209). Further, Defendant's current Motion for New Trial, as to the alleged insufficiency of evidence, does not relate back to the timely filed Motion for Judgment of Acquittal. See Hall, 854 F.2d 1269, 1271 (11th Cir.1988). Therefore, this Court does not possess jurisdiction over Defendant's Motion for New Trial, as to the alleged insufficiency of evidence.

### D. Defendant's Right to Physical Indicia of Innocence When Appearing Before the Jury

■ Defendant's Motion for New Trial asserts that a new trial is warranted be-

cause Defendant was presented before the jury while restrained in handcuffs and because on two (2) occasions jurors passed Defendant in a hallway while Defendant was restrained in handcuffs. Defendant asserts that prejudice exists because as the jurors passed Defendant the jurors allegedly pointed at Defendant and began to laugh. Due to the alleged presentation of Defendant to the jurors while in handcuffs, Defendant asserts that a new trial is warranted.

Once again, Defendant must satisfy the Eleventh Circuit's five-part test for determining whether evidence is newly discovered. *See Hall*, 854 F.2d at 1271. Defendant has not established or even alleged facts sufficient to suggest satisfaction of the *Hall* test regarding newly discovered evidence. In support of this finding, the Court specifically refers counsel to the transcripts of this case, in particular the transcript dated November 12, 1997. (Dkt.190). On page four (4) of the transcript dated November 12, 1997, Defendant and the Court engaged in a discussion of Defendant's allegations regarding the jury's presence while Defendant was handcuffed. On November 12, 1997, before the jury convicted Defendant, the following statements were made by Defendant and the Court:

> [The Defendant]: I was handcuffed in front of the jury here which is in violation of my civil rights . . . .
>
> The Court: With respect to that, I did not see that in front of the jury. You came in and you were obscured from the jury when your handcuffs were taken off. That's what I observed here, okay?
>
> The Defendant: Yes, sir.

(Dkt. 190, page 4). In light of this testimony, which sufficiently shows Defendant's knowledge of the allegations concerning Defendant's presence while restrained by handcuffs at the time of trial, and Defendant's complete lack of satisfaction of the *Hall* five-part test concerning newly discovered evidence, the Court finds, once again, that jurisdiction over Defendant's Motion for New Trial does not exist.

The Court notes that the previously cited statement taken from the transcript dated November 12, 1997, does not address Defendant's allegations that the jurors viewed Defendant in handcuffs while in a hallway and does not address the jurors alleged reaction to viewing Defendant while handcuffed. However, the Court finds, for the reasons previously relied on when addressing Defendant's claims of insufficient counsel, that the jurors alleged viewing of Defendant while handcuffed and the jurors alleged reaction to this viewing are not newly discovered. The Court finds that Defendant possessed knowledge of the jurors alleged reaction to viewing Defendant in handcuffs at the time of trial. It is not enough, when moving for a new trial, that Defendant has recently realized the implications of the allegations Defendant relies on or that Defendant now wishes to reassert every possible alleged error encountered during the prolonged history of this case.

After reviewing Defendant's Motion for New Trial, the United States' response thereto, and relevant case law, the Court finds that jurisdiction over Defendant's Motion for New Trial does not exist. Defendant's Motion for New Trial was not timely filed within seven (7) days after the jury returned its verdict and Defendant has not met the requirements for alleging that a new trial is warranted on the basis of newly discovered evidence. Accordingly, it is

**ORDERED** that Defendant, Virgil Dean St. Pierre's, Motion for New Trial, (Dkt.308), filed on May 21, 1999, be **DENIED** with prejudice.